**PARKS v. HINES et al.**
No. 2918.

Court of Civil Appeals of Texas. El Paso.
Jan. 4, 1934.

Rehearing Denied Feb. 8, 1934.

W. H. Reid and John A. Erhard, both of Dallas, for appellant.

D. L. Whitehurst and A. Leslie Jackson, both of Dallas, for appellees.

WALTHALL, Justice.

Sam G. Hines brought this suit against J. F. Parks and W. G. McCommas on December 21, 1931. Sam G. Hines died pending the suit, and Mrs. Elsie Scott Hines, his widow, and her son, Scott Hines, respectively, executor and executrix under the will of Sam G. Hines, were made parties plaintiffs. After the probate of the will, Mrs. Elsie Scott Hines, being the sole beneficiary or legatee of Sam G. Hines, under the will, the son, upon motion, was dismissed as a party to the suit and Mrs. Elsie Scott Hines prosecuted the suit to its termination.

The record in this case shows that on May 30, 1925, Arthur L. Kramer and C. Weichsel entered into an agreement in writing to the effect that Kramer owns a tract of land known as "Lisbon Acres," consisting of 80 acres, and that Weichsel owned a 160-acre farm adjoining the Lisbon Acres. Kramer and Weichsel in the agreement stipulated for the sinking of an artesian well on the Lisbon Acres, and to erect thereon a well, house, and pumping accessories, etc., all at the expense of each of the two, and that each party shall thereafter own an undivided one-half interest in the well, pumping machinery, etc.; that the electric line should be extended to the site of the well. Other provisions, not pertinent here, are in the agreement.

The record shows that on August 12, 1925, Weichsel, for the consideration stated, entered into a contract in writing to sell to Sam G. Hines and J. F. Parks the 160 acres of farm land mentioned above in connection with the Kramer and Weichsel agreement, and in which contract it is stated Hines and Parks agree to assume and discharge certain obligations of the contract between Kramer and Weichsel concerning the said artesian well, electric light service, and pump equipment, and which contract was thereafter performed by Weichsel conveying to Hines and Parks all of his right, title, and interest to and in the property mentioned in the said contract, the well, and its appurtenances, and the electric light line.

On October 9, 1925, for the consideration stated, Weichsel and wife, by deed conveyed to Sam G. Hines the aforesaid 160 acres of land (161.023 acres) referred to as owned by Weichsel in the said contracts.

Plaintiff alleges, in her petition with reference to the said conveyance from Weichsel and wife to Sam G. Hines, that said deed was made to and in the name of Sam G. Hines, as grantee, with consent of defendant Parks and pursuant to agreements and supplemental agreements, and for the use and benefit of Parks and to the extent of an undivided interest of Parks. The record shows that on October 12, 1925, Sam G. Hines and wife, Elsie Scott Hines, for the consideration stated paid by Parks, conveyed to Parks 79.12 acres of land of the 160 acres formerly owned by Weichsel, and contracted for by Hines and Parks, and part of the land involved in this controversy.

On October 23, 1925, Sam G. Hines, by a conveyance of that date, transferred and assigned to J. F. Parks "an undivided one-half interest in all of his right, title and interest in and to that certain contract and agreement and all of the benefits and interests

thereunder, between Arthur L. Kramer and C. Weichsel of date May 30, 1925, and certain property (describing same) fully described in deed of date October 9, 1925, executed by C. Weichsel and wife to J. F. Parks by deed dated October 12, 1925." As a part of said conveyance it is further stated that Parks "hereby assumes and agrees to pay one-fourth of all expense, cost and charges growing out of said contract between said Arthur L. Kramer and C. Weichsel above referred to; and said J. F. Parks further agrees to extend," at his own expense and without cost to the said Sam G. Hines, a four-inch water line and a line for electric light and current service to the western boundary line of the tract of land conveyed by Sam G. Hines and wife to said J. F. Parks, hereinbefore referred to. That conveyance is signed by J. F. Parks and Sam G. Hines.

On December 21, 1929, J. F. Parks and W. G. McCommas entered into a contract in writing in which it is recited that Parks had on that day sold to McCommas the 79.12 acres of land conveyed by Sam G. Hines and wife to Parks and otherwise identifying said land. The contract recites the existence of the contract between Kramer and Weichsel as to the drilling of a well, the expenses incident thereto, the expenses incident to the bringing to said land the electric light and power lines and water mains from said well, referred to in the foregoing conveyances and contracts, and provides that Parks will hold McCommas, his heirs and assigns, and said land conveyed, clear and harmless from all costs and liabilities by reason of the execution and existence of each and all of said contracts, and provides that should Parks desire at any time to extend a water main across said land to its western boundary, or erect the electric light and power line contemplated in said contracts, he should have the right and privilege to do so. Then follow in the record the conveyance from Parks and wife to McCommas of date December 23, 1929, of the 79.12 acres of land referred to in the above contract. Other conveyances and contracts are in the record, but apparently used on the trial as matters of evidence, and we will later refer thereto if necessary to do so.

Plaintiff, in her petition and supplements thereto, alleged that the legal effect of the above referred to conveyances and contracts obligates defendant J. F. Parks to construct or cause to be constructed at his own expense, and upon demand of Sam G. Hines or his heirs; etc., within a reasonable time the water lines, the line for electric light and current service, from said well to a point on the western boundary line of the land conveyed to him in the division of said 160 acres, said agreement and obligation of Parks, within the mutual intent, agreement, and obligation of the parties being then made and becoming a covenant running with the land thus acquired by Parks. Plaintiff states the necessary expense of constructing the same; that Parks has repudiated his obligation and agreement to construct the said water and electric lines, and that McCommas has acquiesced in such repudiation, and each have failed and refused on demand to do so, to plaintiff's damages stated.

Plaintiff prays for judgment establishing said contracts, obligations, and rights declaring same obligatory upon each of defendants, that same be obligations as attached to said land, and compelling defendants to construct or cause to be constructed said water, electric light and current lines, and in the alternative that plaintiff have her damages stated.

Defendant answered by exceptions, general and special, general and special denials; that said contract, the performance of which is insisted upon by plaintiff, is a futile contract and its consideration had failed; that said well was and is useless and no water tower or tank was or has been provided and no machinery for the operation and pumping has been provided, or if provided was taken away; that the contract is ambiguous in the matters stated, that defendants were not parties to the original contract sued upon and never assumed or agreed in writing to be liable for the contracts, debts, or defaults thereunder; that no privity of contract has ever existed between them and plaintiff, and that by reason thereof plaintiff ought not to recover; the statute of limitations of four years (Rev. St. 1925, art. 5527).

On special issues submitted the jury found:

1. J. F. Parks agreed to make the extensions of water and electric lines in question upon demand of Sam G. Hines.

2. It was the intention of Parks and Hines that the agreement to extend said water and electric lines should be a charge upon the 80 acres of land conveyed by Hines to Parks.

3. Sam G. Hines in person or by his representatives made demand upon J. F. Parks for extension of the water and electric lines in question.

4. On January 22, 1930, demand for the extension of the water and electric lines in question was made.

5. $668 is a reasonable cost of erecting the electric lines in question across the 80 acres of land conveyed by Hines to Parks.

6. $1,188 is a reasonable cost of erecting the water line in question across the 80 acres of land conveyed by Hines to Parks.

7. $450 is the reasonable value of rights of way for the water and electric lines in question.

8. The contract of October 22, 1925, is not incapable of performance by the parties.

9. The consideration for the execution of the contract of October 23, 1925, between Sam G. Hines and J. F. Parks, failed.

Judgment was entered in her favor and against J. F. Parks in the sum of $2,306, with interest thereon from January 22, 1930. Judgment was entered in favor of W. G. McCommas.

Defendant Parks' amended motion for a new trial was overruled, and he prosecutes this appeal.

### Opinion.

■ By the fifth assignment of error appellant, Parks, submits that the court erred in failing and refusing to render judgment in his favor on the jury's finding that the consideration for the contract sued on had failed.

In response to special issue No. 9, the jury found that "the consideration for the execution of the contract of October 23rd, 1925, between Sam G. Hines and J. F. Parks failed." That contract was the basis of Hines' suit.

■■ The assignment must be sustained. Article 2211 of the statutes as amended by Acts 1931, c. 77, § 1 (Vernon's Ann. Civ. St. art. 2211), requires that the judgment of the court shall conform to the verdict, provided that upon motion and notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and providing that the court may, upon like motion and notice, disregard any special issue jury finding that has no support. In entering the judgment the verdict may not be disregarded if it is responsive to the issues submitted and in proper form. The courts have often announced the rule to be that while the verdict remains undisturbed the trial judge is bound by it regardless of its correctness. 25 Tex. Juris.* pp. 484, 485, et seq., pars. 104 and 106, and notes to cases.

It is not suggested by appellee that the judgment was entered non obstante veredicto. No motion was filed for such judgment. Nor does the judgment recite that it was rendered non obstante veredicto, nor find or state the facts that would authorize such judgment.

Appellee, in his brief, as a counter proposition, states that the consideration had not failed.

In view of another trial we will venture to make some observations on some of the matters that might arise on another trial.

By several propositions appellant, Parks, submits that appellee's cause of action, if any she had, was barred by the statute of limitations of four years, the contract sued on being dated October 23, 1925, no time for its performance fixed by the contract, and demand for its performance not having been made until January 22, 1930.

■ By the terms of the contract of October 30, 1925, Parks was to extend a water line from the well and line for electric lights and current service to the western boundary of the land conveyed by Hines and wife to him. That contract together with other contracts, briefly stated above, parol and written, were, we think, interrelated to the contract of October 23, 1925, and constituted one entire contract, and from the nature of the contract and as found by the jury, extension of the lines was to be made upon demand of Hines, and the contract to extend the lines was a covenant running with the land conveyed. We think there can be no doubt that the covenant expressed in the instrument above noted, and especially the instrument of date October 23, 1925, between Parks and Hines, in which Parks agrees to extend the water and electric light lines, and by the express terms of the instrument, extends the covenant to Hines' heirs and assigns, is a covenant running with the land, as distinguished from a personal covenant. Beckham v. Ward County Irr. Dist. No. 1 (Tex. Civ. App.) 278 S. W. 316; 12 Tex. Jur. pp. 52, 53, 54, and 55, §§ 33, 34, 35.

The above facts found by the jury are to be considered in determining the question of limitation.

■ It is a general rule that "the accrual of a cause of action" means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued and the statute of limitation begins to run, but not until that time. Port Arthur Milling Co. v. Beaumont Rice Mills et al., 105 Tex. 514, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; 37 C. J. p. 810, par. 153, and notes thereunder; American Exchange Nat. Bank of Dallas v. Keeley (Tex. Civ. App.) 39 S.W.(2d) 929, 935, and cases cited.

■■ Where a demand is necessary to make the statute of limitations operative, the cause

of action does not accrue until such demand has been made. 37 C. J. p. 957, par. 330, and notes. Also in case of a covenant running with the land, we understand the case of McCormick v. Stoneheart (Tex. Civ. App.) 195 S. W. 883 (writ of error refused), as holding that the statute of limitation would run from the date of demand and repudiation of the covenant, and not from the date of the contract. Four years had not elapsed from the date of demand in either case to the filing of the suit.

If we are not in error in holding that the suit was not barred by limitation, it follows that the court was not in error in admitting in evidence certain exhibits objected to.

■ Error is assigned to the refusal of the court to submit a requested special charge to the effect that the contract of October 23, 1925, between Parks and Hines, that Parks would extend the water and light lines, was executed upon the consideration that the 160 acres purchased by Parks and Hines would be subdivided into lots and blocks, and sold for homestead purposes. Parks pleaded that the contract to extend the water and light lines "was totally without consideration insofar as said Parks is concerned"; or if any consideration was had or received, or intended to be had or received by Parks for the execution of said contract, "such consideration has wholly failed," and is unenforceable.

Without quoting from the record, it is undisputed that by the documentary and other evidence the consideration referred to in the submitted special charge was only a part of other and apparently larger contracts referred to in the statement, and such failure of Hines is referred to by appellant as a partial failure. The failure on the part of Hines of the consideration referred to in the submitted charge was his failure to lay out said property into lots and blocks for sale. Such failure was only a partial failure of consideration for the contract.

■ Where appellant Parks makes no objection to the court's charge submitting the measure of damages, we may not, under Southern Casualty Co. v. Fulkerson (Tex. Com. App.) 45 S.W.(2d) 152, discuss the measure of damages. The question of damages may not be an issue on another trial.

■ In view of the record before us, we are of the opinion that the court was not in error in submitting issue No. 1, inquiring whether Parks agreed to make the extension of the water and light lines in question. The court probably should have instructed the jury that such was his obligation under the contract of October 23, 1925, and the execution of the contract, to extend the lines, is not denied. The submitted substituted charge would not have been proper, being upon a failure or part failure of consideration to extend the lines. The issues are quite different.

If the court should have instructed a verdict for appellant, Parks, as submitted, it should not have been upon the grounds stated in the motion, or here, but upon the finding of the jury that the consideration for the obligation to extend the lines had failed, discussed elsewhere.

■ The court submitted for the jury's finding whether it was the intention of Parks and Hines, by the agreement (of October 23, 1925), to extend the water and light lines "should be a charge upon the 80 acres of land conveyed by Hines to Parks"; to which the jury answered, "Yes."

Parks submits that the charge was error on the ground that such covenant was not expressed in the deed itself. The deed from Hines and wife to Parks, of date October 12, 1925, conveying the 80 acres of land, does not express the obligation to extend the lines.

The intention of Hines and Parks as gathered from the terms of the writings is the controlling consideration. The obligation to extend the lines is expressly stated in the agreement of October 23, 1925, and omitted, but implied, in the deed conveying the land. It is immaterial whether the contract to extend the line is evidenced by one or two instruments, or is in form of a deed or written contract. American Sulphur Royalty Co. v. Freeport Sulphur Co. (Tex. Civ. App.) 276 S. W. 448, affirmed 117 Tex. 439, 6 S.W.(2d) 1039, 60 A. L. R. 890.

■ Where the contract is evidenced by several instruments, they will be construed together as held by the case last above referred to. The intention of the parties to extend the lines is apparent from the two instruments, and while the court preferred to submit the question of intention as an issue of fact, we think the court could have expressed the same fact in construing the instruments.

■ The court admitted in evidence, over objection, the costs for the construction of the two lines; the admission of such evidence is assigned as error. The question of error depends upon the measure of damages to be applied. If the rule to be applied for the measure of damages is the difference in value of the Hines 80 acres with and without the extension of the lines, the evidence might

not be the best way to arrive at the values. Here the costs of the extension of the lines were within the contemplation of the parties as evidenced by the agreements, and given an independent consideration and such costs were capable of proof of reasonable certainty. While the question of the measure of damages is not directly before us, we feel that we might suggest, without deciding the rule to be applied, that what the parties had in mind as the costs for the extension of the lines would be a better and safer rule than to have the jury guess at the value of the difference in value of land with and without the lines extended. Such measure of damages applied would seem to come nearer complying with the intention of the parties in making the contract than any other rule. The loss contemplated by the parties is the loss to be recovered.

We think the pleading of Hines is sufficiently specific to admit the evidence as to the cost of the extension of the lines.

Parks' submitted special issue No. 4, requesting a finding whether Hines "had done and performed the things and matters required of him under the terms of said contract," is too indefinite to justify its submission. Both parties submitted that the "contract" was partly in writing and partly in parol. Where Hines has agreed "to subdivide the 80 acres into lots and blocks and build upon and develop same for sale," as submitted, and where the undisputed evidence was that he had not done so, there would be no issue for the jury.

The court was not in error in admitting in evidence the several exhibits briefly referred to in the statement. They seem to be interrelated to the matters at issue and serve as an explanation of much of the issues here.

The court was not in error in sustaining Hines' objection to the following question to Parks: "If Mr. Hines had carried out the understanding and agreement with you that you and he had, and the consideration for the execution of this contract to build those lines and subdividing that property for sale into lots and blocks, would you have put this water line and electric light line through?"

The record does not show what the answer would have been. We infer from other matters inquired about that witness would have answered, "Yes."

We do not see the purpose of the question and answer, unless it would be to show that if Hines had carried out his part of the contract Parks would have carried out his by extending the lines. The court did not submit an issue to which the question and answer, had there been an answer, would tend to prove or disprove. What Parks would have done under conditions that did not exist was immaterial in view of the jury's finding that the consideration for the contract to extend the lines had failed. The question and answer did not tend to show that Hines prevented Parks from extending the lines.

The troublesome question is presented as to the judgment that should be rendered here. We are under the impression that special issue No. 9 should not have been submitted in the form in which it was submitted, and that by reason thereof the finding embraces more than the evidence would justify. In other words, if in the division of the 160 acres the parties estimated that the Hines 80 acres was of less value, by reason of situation or otherwise, than the Parks 80 acres, and, to compensate for the difference in values, Parks agreed to extend the lines across his 80 acres to Hines' west boundary line, whatever Hines had failed to do in developing his 80 acres for sale would not, in the absence of some agreement to that effect, necessarily relieve Parks from compensating Hines for the difference in value of the two tracts of land. The record seems to show that Hines and Parks each voluntarily abandoned the plan of developing the land for sale. If such is a fair interpretation of the facts as it seems to us to be, by agreement, Hines' land is of less value than Parks', to the extent of the cost of extending the lines to Hines' west boundary. We do not find in the record any agreement or inference to the effect that a failure of Hines to develop the land would release Parks from extending the lines. They both failed to develop the land for sale. That might have been justified by reason of the well or other causes. However that may be, we do not find in the record, by agreement or otherwise, that Hines has been compensated by Parks for the value of Hines' land to the extended lines, and to such extent the consideration for the execution of the contract of October 23, 1925, seems not to have failed.

The condition of the record is such that, in justice to both parties, the case should be reversed and remanded, and it is so ordered.

## On Motion for Certiorari and Rehearing.

HIGGINS, Justice.

Appellee moves for certiorari to perfect the record by bringing up copy of motion for judgment filed by appellee. It is ordered that the certified copies attached to the mo-

tion be filed and considered as a part of the record. The record thus perfected shows that counsel filed a motion which reads:

"Comes now Mrs. Elsie Scott Hines, feme sole, Plaintiff in the above styled and numbered cause, and moves and prays the Court to render and cause to be entered judgment in favor of the Plaintiff of terms and form or substance of that shown in Exhibit "A" attached hereto and made a part hereof.

"Alternatively and in event the Court deems that judgment of the terms, form or substance of that described in said Exhibit "A" is improper, Plaintiff prays and moves the Court to render and enter judgment in the cause in terms and form or substance of that shown in Exhibit "B" attached hereto and made a part hereof."

It is insisted the motion is sufficient to show compliance with the statutory provision authorizing judgment non obstante veredicto upon motion and notice.

Article 2211 R. S., as amended by chapter 77, Acts 42d Legislature (1931) p. 119 (Vernon's Ann. Civ. St. art. 2211), reads: "The judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

■ We do not regard the motion and attached exhibits as constituting a motion for judgment non obstante veredicto as required by the statute. The provision which permits a judgment non obstante veredicto is an exception to the general rule, and therefore a party seeking to bring himself within such exception must apprise the court, as well as the opposite party, of the grounds upon which he depends. By the provision for motion and a reasonable notice, it was evidently the intention of the Legislature that a party seeking to have judgment rendered in his favor notwithstanding the verdict should notify the opposite party of the grounds upon which he depended in order that such opposite party might have an opportunity to contest the existence thereof.

The motion is the ordinary one for judgment upon special issue findings. There is nothing to indicate an attack upon any finding. Both of the forms of judgment tendered

with the motion purport to be judgments upon the findings. The judgment rendered was that shown by Exhibit B.

Certainly there is a difference between a motion for judgment upon the jury's findings and a motion non obstante veredicto.

No particular form is required for a motion of the latter nature, but it must sufficiently disclose its nature. We think a motion which makes no attack upon the sufficiency of the evidence to support a general verdict or a special issue finding cannot properly be considered as a motion for judgment non obstante veredicto.

The motion does not attack any finding and the judgment rendered purports to be based upon the findings. The perfected record does not aid appellee.

■ It is also urged the point was not raised by appellee. We think it was. But if not raised, the result must be the same, for the judgment must conform to the verdict and failure so to do is fundamental error. 3 Tex. Jur. p. 828, and cases cited in note 14.

The motion for rehearing is overruled.

WALTHALL, Justice (dissenting).

The only question presented here is as to the sufficiency of Mrs. Hines' motion and attached exhibit (the judgment requested referred to in the motion) to authorize the rendition of the judgment in her favor, under article 2211, as amended by the 42d Legislature, Acts 1931, p. 119, chapter 77, § 1 (Vernon's Ann. Civ. St. art. 2211). Previous to the above amendment, the statute required that judgments conform to the verdict. The amendment provides that "upon motion and reasonable notice the Court may render judgment non obstante veredicto" if a directed verdict would have been proper, and "provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

The majority members of this court do not regard the motion filed by Mrs. Hines and acted upon by the trial court in entering judgment as a sufficient motion for judgment under the above-quoted amendment to the statute, for the reason, as stated, the motion is the ordinary one for judgment upon special issue findings; that there is nothing to indicate an attack upon any finding.

I do not concur in the conclusion reached by the majority members in disposing of the motion for rehearing.

As stated in the opinion, the jury found

that the consideration for the execution of the contract between Sam G. Hines and J. F. Parks failed. Without discussing that finding here, we might say that the jury's finding was without any evidence to support it, and for that reason we were of the opinion, and so expressed it, that judgment should have been rendered for Mrs. Hines had a proper motion for judgment in her favor been presented, as in the above quoted statute. I have said this much for the purpose of saying that, in my opinion, in view of the jury's finding, as above, the motion for judgment and the judgment submitted do not conform to the jury's finding, and, therefore, necessarily indicate an attack upon the jury's finding. To point out in motion that it is an attack upon the finding would add nothing, and, in my opinion, would be only an argument or reason for the motion, but would advise the court of no fact not fully disclosed by the record.

The procedure for such judgment is a "motion and reasonable notice." The statute does not prescribe more. The real ground for a judgment which does not conform to the verdict is not the motion, but the disclosure by the record of either one or both of the grounds that authorize the rendition of such judgment, of which the court would necessarily know:

I am of the opinion that the motion and the judgment entered on the motion sufficiently indicate an attack upon the jury's finding contrary thereto. For reasons stated, I think the trial court's judgment should be sustained and the case affirmed.