**CLEMENTS et al. v. TAYLOR et al.**
No. 2481.

Court of Civil Appeals of Texas. Eastland.
Nov. 10, 1944.

E. J. Miller, of Brownwood, for appellants.

Wilkinson, Johnson, Griffin & Bohannon, of Brownwood, for appellees.

FUNDERBURK, Justice.

By a written instrument executed in 1941, recorded August 13, 1941, Paul Richardson, owner of lots 7 and 8 (among others) in Block 1 of the Ragsdale Addition to the City of Brownwood, and Pauline Ragsdale Ater (reciting joinder by her husband but not signed or acknowledged by him) for herself and as attorney in fact for other heirs of Paul C. Ragsdale and wife, Maggie Baggett Ragsdale, owners of lots 1, 3, 6 and 7 (among others) in Block 2, and lots 10 and 11 in Block 1 of said Addition, agreed to certain restrictions upon all said property, denominating such restrictions as "Protective Covenants." The expressed purpose of the agreement was "in order to promote the construction of desirable residences and the proper development of said property." The agreement provided: "These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1966, at which time said covenants shall be automatically extended for successive periods of ten years, unless by a vote of majority of the then owners of the lots it is agreed to change said covenants in whole or in part."

The restrictions as set forth in the agreement were as follows:

"1. No residential structure shall be erected or placed on any building plot whereby the contract for such building structure shall be below the figure of $2,-500.00. In other words, no house shall be built on any of the said lots unless said house shall have cost the builder thereof at least $2,500.00.

"2. No noxious or offensive trade or activity shall be carried on upon any lot, nor shall anything be done thereon which may be, or become an annoyance or nuisance to the neighborhood.

"3. The above described lots are intended as a residential district exclusively for people of the white race, and no use or occupancy under any kind of contract of any lot or building shall be permitted to anyone not of the white race, provided however, that this restriction shall not be constituted [construed?] to prevent occupancy by domestic servants of a different race or nationality employed by an owner or tenant.

"4. No structure shall be moved on to any lot, unless it shall conform to and be in harmony with the existing structures on other lots and with the requirements set out in these restrictions.

"5. All residences shall be connected with the water, light and sewerage services of the City of Brownwood, Texas."

W. Pat Taylor and others became the owners of said lots (each in severalty of a different lot) formerly owned by the heirs of Paul C. Ragsdale and wife; and M. A. Clements and wife became the owners of said lots formerly owned by Paul Richardson, all acquiring their titles subsequently to the execution and recording of said agreement and by general warranty deeds containing no restrictive covenants and making no reference to said agreement.

M. A. Clements and Oliver Allman (the latter being the father-in-law of Clements and claiming under and subject to him) had no knowledge of said agreement other than such, if any, as resulted from the recording thereof. Clements and Allman moved on to one of said lots a one room shed room garage, 14x16 feet, which Allman subsequently used "to carry on his business of repairing and upholstering furniture with small handtools only, and without employees or helpers." The work being carried on in said shed room "creates no noise and does not disturb the Plaintiffs or their families. Allman does furniture repairing and upholstering for the public and the furniture repaired or upholstered is delivered to Allman at said shed in trucks, automobiles and other convenient vehicles and hauled away after it is repaired or upholstered in the same conveyances." Allman commenced construction of a 12x16 foot extension to the shed room on the Clements' lots in order to have more room to carry on his trade of furniture repairing and upholstering and intended to carry on said business just as he had been doing, which required more room.

This suit was brought by W. Pat Taylor and others, successors to the title and interests of heirs of Paul C. Ragsdale and wife in said lots, against M. A. Clements and wife (joining also said Oliver Allman as a Defendant) to enjoin said defendants from alleged violations of said restrictive covenants. It was alleged defendant had violated said restrictions (1) "By moving on to said lot [owned by Defendants] * * * a shed or shack about 12 feet wide and 200 [20?] feet long with one long sloping roof, in which Defendant and Oliver Allman now conduct what he calls a cabinet shop. The total value of said shed does not exceed $100.00. The Defendants are now in the process of building

a small extension to said shed, the value of which does not and will not exceed $50.-00, said extension being added to shed for the purpose of affording the Defendant Oliver Allman additional space for his cabinet work. Said shed, as Plaintiffs are informed, is not connected with city sewerage services. Defendants, therefore, have violated each and every restriction and covenant running with the title on their lots and to Plaintiffs' lots, as fully set forth in the Restrictions and covenants herein fully set out * * * [and] Plaintiffs * * * are entitled to an order of this honorable court preventing Defendants from further work on said extension to said shed, permanently restraining them from using said lots Nos. 7·and 8 in Block No. 1 as a place to conduct a cabinet shop or any other sort of business and to a mandatory writ compelling Defendants to forthwith remove said shed from said premises *. * *." The prayer was in accordance with the above allegations, except it was· further prayed that defendants be enjoined from using said "premises·for any purpose other than homestead purposes" and for general relief.

In a non-jury trial the Court gave judgment for plaintiffs against defendants, "restraining and enjoining them and each of them from operating or permitting to be operated on said lots 7 and 8 in Block 1, Ragsdale Addition to the City of Brownwood, a furniture repairing and upholstering business and from using said lots for any purpose other than residential purposes including the right to construct such out building as is necessary to. the use of said lots for residential purposes, and the business now being operated thereon by the Defendant Oliver Allman shall cease and be removed from the shed now on said premises within 20 days from date of final judgment."

The defendants have appealed.

It is believed we can best state our conclusions without separate mention of the several points, but in such way as to express our opinion on the merits of all the questions raised.

As we see it, no important question is controlled, or materially affected, by the provision of R.S.1925, Article 1291 or 1297. Article 1291 provides as follows: "Every estate in lands which shall thereafter [hereafter] be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

Article 1297 is as follows: "From the use of the word 'grant' or 'convey,' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs or assigns, are implied, unless restrained by express terms contained in such conveyance:

"1. That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any right, title or interest therein, to any person other than the grantee.

"2. That such estate is at the time of the execution of such conveyance free from incumbrances."

Article 1291 cannot operate to enable.a grantor to vest in a grantee the ownership of land which the grantor does not own. Similarly, Article 1297 cannot operate to enable a grantor who owns land subject to a valid easement of a third party to vest in a grantee the ownership of such land discharged of such easement. Manifestly these statutes were not intended to accomplish such results.

■ In our opinion, the predecessors in title of both the plaintiffs and defendants at the time they owned the land now owned by plaintiffs and defendants had the right and power to impose the restrictions in the manner they attempted to do by the written agreement in question. With reference to restrictions like these here involved, Tiffany on Real Estate, Section 45, says: "The restrictions may be independent of any conveyance of land, being merely by agreement between adjoining owners as regards the use of their land." Such, for example, was the manner of imposing like restrictions in Trustees of Columbia College v. Lynch, 70 N.Y. 440, 26 Am.Rep. 615; and Meade v· Dennistone, 173 Md. 295, 196 A. 330, 114 A.L.R. 1227.

■ Such restrictions are properly designated "negative easements." In Miller v. Babb, Tex.Com.App., 263 S.W. 253, 254, it is said: "An 'affirmative easement' is one which gives to the owner of the dominant tenement the right to use the servient tenement, or to do some act thereon which would otherwise be unlawful. A

'negative easement' is one in which the owner of the servient tenement is by reason thereof restricted in some of his rights in respect to his lands, in favor of the owner of the dominant tenement." This decision, if we understand it, identifies a "restrictive covenant" with a "negative easement." An easement in land is an interest in land—an incorporeal hereditament. Miller v. Babb, supra; Parsons v. Hunt, 98 Tex. 420, 84 S. W. 644; Monk v. Danna, Tex.Civ.App., 110 S.W.2d 84. Since the agreement in question evidenced "negative easements" in all the land in favor of the owner of each lot, against the owners of all other lots, it was an instrument authorized to be recorded by the provisions of Vernon's Annotated Civil Statutes, Article 6626. Its record was constructive notice to defendants of the existence of such easements, under express provision of R·S.1925, Article 6646. These easements were, therefore, in the defendants' chain of title and the record was constructive notice to the defendants.

■ It is believed to be of no controlling importance that Pauline Ragsdale Ater, who joined individually and as attorney in fact with Paul C. Richardson in the execution of the agreement imposing the restrictive covenants, was not joined by her husband or did not acknowledge the instrument as a married woman. Insofar as she was acting as attorney in fact for the other Ragsdale heirs she could, as their agent, execute the instrument as a feme sole. Spears Law of Marital Rights, Sections 268, 141, 246, 264, and 327. The same principle requiring joinder of the husband and privy examination and acknowledgment of the wife, which is applicable to the. execution of written instruments, is also applicable to the joinder of the husband in suits or actions. Spears Law of Marital Rights, Sec. 507; Safeway Stores of Texas v. Rutherford, Tex.Civ·App., 101 S.W.2d 1055.

■ It isn't necessary that all the parties purportedly joining in the agreement creating the restrictions did so effectively. The intention of all to join therein is clear. "A mutual restrictive covenant between lot owners is binding although not signed by the owners of all lots in the territory covered where it was the intention that the restriction should bind them all." 26 C.J.S., Deeds, § 167, subd. d, p. 560. Even, therefore, if between the assignees of Paul Richardson and the assignees of the Ragsdale heirs the individual interest of Mrs.

Ater was not bound because of the nonjoinder of her husband the restrictions upon appellees' land are none the less enforceable because they are mutually binding upon them and the assignees of the Ragsdale heirs, other than Mrs. Ater.

■ We conclude that the power of attorney from the other Ragsdale heirs to Mrs. Ater was sufficient to authorize the latter to enter into the restrictive covenants· Among other things, Mrs. Ater, being authorized to sell the land, was further authorized "to execute to the purchaser or purchasers thereof such deed or deeds or assurances of title to said land *with such covenants* and warrants [warranties?] as to said attorney *may seem proper*," etc. (Italics ours.) This, in our opinion, was authority to impose the restrictive covenants upon the land.

■ Although we have concluded that the restrictions were valid and constitute negative easements upon the lots of Defendants and binding them to their observance, we are of the opinion that the court below misconstrued the restrictions at least in the respect constituting the basis of the judgment. While the purpose of the restrictions was (as stated) "in order to promote the construction of desirable residences and the proper development of said property," there is absent the showing of any intention that no business enterprise was to be conducted on the premises. There is an implication that the restrictions did not exclude the carrying on of all *trades,* but only "noxious or offensive trades." It is further implicit in the restrictions that some "activities" were not within the restrictions, but only "noxious or offensive" activities. The restriction reading, "No structure shall be moved on to any lot unless' it shall conform to and be in harmony with the existing structures on other lots and with the requirements set out in these restrictions," was not shown to have been violated, we think, because, in our opinion, such restriction has reference to a residence structure. If a lot owner subject to the restrictions, instead of building a residence garage, moved one on to a lot whereon he also intended to build a residence, or already had a residence, costing not less than $2,500, we think there would be shown no violation of the restriction. We are unable to see that the situation here is any different.

If it had been shown that defendants were constructing, or intended to construct,

a building for business purposes which would not reasonably permit of the construction of a residence costing not less than $2500, a different case would be presented. But it was shown that defendants intended to construct a residence building on the lot, and hence, there was no evidence to warrant the conclusion that the use of the property for residence purposes was being abandoned and the use of it as a business property substituted.

The findings of the trial judge, as before shown, not only do not include a finding that Allmans' trade or business was "noxious or offensive," but, in effect, the contrary.

It is, therefore, our conclusion that the judgment should be reversed and judgment be rendered that the plaintiffs take nothing. It is accordingly so ordered.