CLEAR LAKE APARTMENTS, INC.,
Appellant and Cross-Appellee,

v.

CLEAR LAKE UTILITIES CO. et al.,
Appellees and Cross-Appellant.

No. 1325.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 17, 1976.

Rehearing Granted in Part and Denied in Part April 14, 1976.

Second Rehearing Denied May 5, 1976.

**50**

Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, for appellant and cross-appellee.

Louis B. Paine, Jr., Hayden Burns, Butler, Binion, Rice, Cook & Knapp, Jerry L. Bryan, Houston, for appellee and cross-appellant Clear Lake Utilities Co.

Charles A. Easterling, City Atty., Houston, for appellee.

Raybourne Thompson, Jr., W. Allyn Hoaglund, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellee Clear Lake City Water Authority.

CIRE, Justice.

Clear Lake Utilities Company (Utilities) sought a declaratory judgment to determine the status and validity of two contracts—one between Utilities and North Clear Lake Development Corporation (NCL), the predecessor in title of property now owned by Clear Lake Apartments, Inc. (Apartments), and one between Utilities and Clear Lake City Water Authority (Authority).

*The Contract Between Utilities & NCL*

The contract between Utilities and NCL, dated November 21, 1967, provides that Utilities "shall have and is hereby granted the exclusive right to furnish water and sewer service" to approximately eight acres of land and to "all owners and occupants of any part thereof for and during the entire term of this contract." As to its duration, the contract states, "the term of this agreement shall continue in effect and be irrevocable for the maximum period of time during which it may lawfully do so." The property involved is now owned by Apartments. By a letter dated March 18, 1975, Apartments informed Utilities that it intended to terminate the contract made between Utilities and NCL, and to contract with the City of Pasadena for water and sewer service to the land owned by Apartments; whereupon Utilities instituted this suit.

Utilities contends that its contract with NCL constitutes a covenant running with the land, and as such is binding on NCL's successor in title, Apartments. The contract provides that it

shall be binding upon and shall inure to the benefit of Company and Landowner and the respective heirs, legal representatives, successors and assigns of each of

them, and shall constitute covenants running with Said Land and with Company's water and sewer disposal system and properties. . . .

Apartments answered that: 1) the contract is invalid because it creates a constitutionally prohibited monopoly; 2) the contract does not constitute a covenant running with the land; 3) Apartments is entitled to protection as a purchaser from a bona fide purchaser without notice of the contract. The trial court found that the contract between NCL and Utilities was a covenant running with the land; that it was intended to remain in effect for a reasonable time; and that a reasonable time was to be five years from the date of judgment. Both Utilities and Apartments have appealed.

We hold that the November 21, 1967 contract between Utilities and NCL is not binding, as to its exclusive service provisions, on Apartments.

■ The contract between Utilities and NCL does not meet the requirements necessary to make it a covenant running with the land enforceable at law so as to bind NCL's successors in title. Such a covenant must be made between parties who are in privity of estate at the time the covenant is made, and must be contained in a grant of the land or in a grant of some property interest in the land. Restatement of Property § 534 (1944); *Panhandle & S. F. Ry. v. Wiggins*, 161 S.W.2d 501 (Tex.Civ. App.-Amarillo 1942, writ ref'd); *see Parks v. Hines*, 68 S.W.2d 364, 367 (Tex.Civ.App.-El Paso 1934), *aff'd*, 128 Tex. 289, 96 S.W.2d 970 (1936); 20 Am.Jur.2d Covenants, Conditions and Restrictions §§ 33, 34 (1965); 21 C.J.S. Covenants §§ 58, 59 (1940). *See also Clements v. Taylor*, 184 S.W.2d 485, 487–88 (Tex.Civ.App.-Eastland 1944, no writ). Texas courts have held that irrigation contracts which create an easement in the property of the landowner, or in the real property (such as canals or levies) of the water supplier, transfer a sufficient interest in the land to create the necessary privity of estate. *Beckham v. Ward County Irrigation District No. 1*, 278 S.W. 316, 318 (Tex.

Civ.App.-El Paso 1925, writ ref'd); *Chapman v. American Rio Grande Land & Irrigation Co.*, 271 S.W. 392, 394 (Tex.Civ.App.-San Antonio 1925, writ ref'd); *Ball v. Rio Grande Canal Co.*, 256 S.W. 678, 682 (Tex. Civ.App.-San Antonio 1923, writ ref'd). But the contract between Utilities and NCL did not create any privity of estate: it was not part of any transaction conveying the land involved, or any easement in it, between the parties. To the contrary, the contract specifically states that Utilities "agrees to construct and maintain reasonably adequate operative water and sewage trunklines and/or laterals to serve Said Land in existing easements adjoining Said Land." The contract further provides that "[c]onstruction, installation, maintenance and operation of service lines on Said Land connecting to Company's water and sewer trunklines or laterals adjacent thereto shall be at the cost and expense of Landowner".

Utilities claims that even if the contract of November 21, 1967 does not constitute a covenant enforceable at law against NCL's successors in title, it may be enforced in equity by virtue of the fact that Apartments had notice of its provisions at the time the property was conveyed to Apartments. The contract was recorded in the Harris County Deed Records on November 27, 1967; the property was conveyed by NCL to Pan, Inc. on December 29, 1967, and by Pan, Inc. to Apartment's predecessor on December 20, 1968.

■ It is true, as Utilities contends, that a purchaser must take notice of all recorded instruments within his chain of title and *affecting his title*. We think the recording of the November 21, 1967 contract gave Apartments constructive notice of its contents. This is not sufficient, however, to create an equitable interest in the land in favor of Utilities and enforceable against Apartments to the extent that Apartments may be required to continue the exclusive franchise granted by NCL.

■ A promise enforceable in equity and thus creating an equitable interest in the land of the promissor (which here would be

NCL) must be a promise respecting the use of the land of the promissor. Restatement of Property § 539 (1944); *see Clements v. Taylor*, 184 S.W.2d 485, 487 (Tex.Civ.App.-Eastland 1944, no writ). NCL's promise to grant an exclusive franchise to Utilities neither created any easement in NCL's property nor obligated NCL to use its property in any particular manner. There are numerous Texas cases in which subsequent grantees have been required, in equity, to perform promises made by their predecessors in title with respect to the use of or title to their property. Typical are the "restrictive covenant" or "negative easement" cases in which adjoining landowners make reciprocal promises respecting the use of their land. Such promises include those pertaining to such portions of the estate as water or mineral rights, as well as promises such as liens, which grant an equitable interest in the title itself. We have neither found, nor been cited, any case in which a promissor's successor in title has been required to perform a promise which did not operate to create in the promisee an equitable right to have the land of the promissor put to a particular use.

■ In its brief Utilities states that "[i]t is clear from the terms of the . . . contract that Utilities required, as a prerequisite for its construction of the water and sewer system, assurances that those to whom water and sewer services were furnished would continue to use them." Such a promise by NCL could only be construed and enforced as a purely personal covenant that NCL would procure such assurances from subsequent grantees. *E. g., Combs v. United Irrigation Co.*, 110 S.W.2d 1157, 1159 (Tex.Civ.App.-Dallas 1937, writ dism'd). It may not reasonably be interpreted to have placed a restriction on the use of the property.

■ The facts of the transaction reveal a further reason why Utilities may not claim equitable enforcement of the exclusive franchise granted in the November 21, 1967 contract. The record shows that Lester Tatum, president of Utilities, owned approximately 100 acres of property, of which that now owned by Apartments is a portion. Tatum sold various tracts out of this original 100 acres to corporations, including NCL, of which he was also the president. As president of all these corporations, Tatum executed contracts with Utilities, which contracts were substantially identical to that between Utilities and NCL. Tatum's attempt, by contracting between his various corporations, to create a monopoly for Utilities may not be enforced in equitable proceedings.

■ Utilities argues that NCL has created "an exclusive right or privilege is granted only upon the property or premises of the grantor." *Airport Coach Service, Inc. v. City of Fort Worth*, 518 S.W.2d 566, 572 (Tex.Civ.App.-Tyler 1974, writ ref'd n. r. e.). While this rule may have been applicable while the property was still owned by NCL, the right of NCL to make such a promise concerning the property ended when NCL conveyed the property. NCL could not by this contract reserve, grant or maintain any monopolistic powers over the sewer and water service beyond the period of its ownership. *Riley v. Davidson*, 196 S.W.2d 557, 560 (Tex.Civ.App.-Galveston 1946, writ ref'd n. r. e.).

### *The Contract Between Utilities and Authority*

Utilities' contract with Authority, dated July 11, 1966, provides in part that Utilities is to have "the exclusive right, as between the parties hereto, to furnish water and sanitary sewer service to parties within" a tract of land containing approximately 100 acres. The property owned by Apartments is a part of this tract. The contract is silent as to its duration.

On January 3, 1970 Authority entered into a "waste disposal" contract with the City of Pasadena concerning sewage service to part of the 100 acre tract, then located within the City of Pasadena, and which was included in the contract between Authority and Utilities. Utilities instituted this suit for a declaratory judgment that its contract with Authority, granting exclusive rights to

Utilities to supply water and sewer service to the property, is a valid, subsisting contract and has been breached by Authority and the City of Pasadena. Authority answered by counterclaim, alleging that its contract with Utilities has been terminated and that it was void ab initio for various reasons. The trial court found that the contract was valid and was to remain in force for a reasonable time, determined to be five years from the date of judgment. Both Utilities and Authority have appealed.

Utilities contends that the absence of indispensable parties deprived the court of jurisdiction to enter judgment. We agree. The applicable portion of the Declaratory Judgments Act reads:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

Tex.Rev.Civ.Stat.Ann. art. 2524–1 § 11 (1943).

Utilities asserts that all landowners within the 100 acre tract covered by the July 11, 1966 contract are parties whose interest will be affected by this judgment and are therefore indispensable parties. These property owners receive water and sewer service from Utilities under contracts granting Utilities the exclusive right to provide such services. Each of these contracts is expressly made subject to the July 11, 1966 contract between Utilities and Authority. The record reflects that Utilities does not have sewage treatment facilities of its own and has forfeited its permit to construct and operate such a facility. Utilities is able to furnish sewer service to these customers only by virtue of its contract with Authority, whereby Authority provides the necessary sewage treatment. While the absent landowners are not parties to the July 11, 1966 contract, a declaratory judgment that this contract was void ab initio, or that it is no longer effective, would deprive Utilities of its capability to provide sewage treatment service to these customers. Since their contracts with Utilities prevent them

from looking elsewhere for such service, the outcome of this litigation could completely deprive these parties of sewer service. This is an interest that will be directly affected by the judgment.

■ The Declaratory Judgments Act states that all persons having such an interest *shall* be made parties. The use of the term *shall* is obviously mandatory. Declaratory relief is a remedy provided only by statute; therefore, the plain meaning of the statute must control. The Act does not allow, as does Tex.R.Civ.P. 39, the trial court to render judgment absent parties who are not so indispensable as to deprive the court of jurisdiction as between the parties already joined. *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex. Sup.1974); *Crickmer v. King,* 507 S.W.2d 314, 316–17 (Tex.Civ.App.-Texarkana 1974, no writ). Although this might be an onerous burden in some cases, we see no alternative for those who seek relief under the Declaratory Judgments Act but to join all those persons "who have or claim any interest which would be affected by the declaration."

■ The further provision of the Act that "no declaration shall prejudice the rights of persons not [made] parties" can only mean that persons, who may or may not have been proper parties, but who did not at the time of the law suit have an interest which would have been affected by the judgment, are not bound by the judgment. *Crickmer,* 507 S.W.2d at 316. Thus, for example, the property owners, other than Apartments, in this 100 acre tract are not bound by our judgment concerning the contract between Utilities and NCL even though that contract is identical with Utilities' contracts with the other landowners. The other landowners might properly have been joined in that suit, but since they had no interest affected by a judgment concerning that contract, they were not parties required to have been joined. Likewise, their lack of joinder prevents them from being bound by that judgment.

We find that by virtue of the particular nature of Utilities' contract with Water Au-

**54**

thority, and of the absent landowners' contracts with Utilities, the landowners have an interest which will be affected by the outcome of this suit. Under the mandatory provisions of the Declaratory Judgments Act the trial court's failure to join them deprived it of jurisdiction to render judgment.

The judgment of the trial court is reversed. The portion of the suit between Clear Lake Apartments, Inc. and Clear Lake Utilities Co. is severed, and judgment is here rendered that the November 21, 1967 contract granting Utilities the exclusive right to furnish water and sewer service to property owned by North Clear Lake Development Corporation did not create any obligation now binding upon Clear Lake Apartments, Inc. The remaining lawsuit between Clear Lake Utilities Co. and Clear Lake City Water Authority and the City of Pasadena is remanded to the trial court with instructions that if the indispensible parties are not joined within a reasonable time, the action is to be dismissed.

Reversed and rendered in part; reversed and remanded in part.

## ON MOTION FOR REHEARING

In our original opinion we inadvertently overlooked that portion of Utilities' case against Authority and the City of Pasadena concerning conspiracy on the part of those two defendants to interfere with the July 11, 1966 contract between Utilities and Authority. Pasadena's and Authority's motions for rehearing are granted to correct this oversight.

In its first supplemental amended petition Utilities alleged

[t]hat the City of Pasadena wilfully and maliciously conspired with Clear Lake City Water Authority to deprive Plaintiff of the benefits of the above-described contract [July 11, 1966] by persuading Clear Lake City Water Authority to breach the contract; and that during the months preceding the making of the contracts between Clear Lake City Water Authority and the City of Pasadena [Jan-

uary 3, 1972] those two defendant parties had various conferences in which they conspired to have Clear Lake City Water Authority breach its contract with Plaintiff. . . .

Utilities prayed for actual and exemplary damages on this cause of action.

This portion of the suit being separate and severable from the suit for declaratory judgment, it is governed by Rule 39 of the Texas Rules of Civil Procedure, and the trial court did have jurisdiction to render judgment.

In its findings of fact and conclusions of law the trial court held:

12. That there has been no unlawful interference with any contractual relationship that may exist between Clear Lake Apartments, Inc., Clear Lake Utilities Co., and Clear Lake City Water Authority by reason of the contract between the City of Pasadena and Clear Lake City Water Authority dated January 3, 1972.

16. That Clear Lake Utilities Co. is entitled to no money damages, either actual or punitive, from Clear Lake City Water Authority or the City of Pasadena.

■ By these findings the trial court held that Utilities had failed to establish by a preponderance of the evidence that there had been any unlawful interference. Without determining the validity of the July, 1966, contract, we affirm that ruling. Utilities may not maintain a cause of action for conspiracy to interfere with its contractual rights unless there has actually been a breach of contract. *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 576 (Tex. Civ.App.-Austin 1958, writ ref'd n. r. e.).

■ The contract between Utilities and Authority provides that, *as between Utilities and Authority*, Utilities shall have the exclusive right to furnish water and sewer service to the parties within the 100-acre tract involved. It does not attempt to govern, as between the City of Pasadena and Utilities, who shall provide such service;

nor does it attempt to govern services provided by Authority to the City of Pasadena. The contract between Pasadena and Authority states only that Authority will provide services to the City of Pasadena; Authority's customer under that contract is not "the parties within said tract", but is the City of Pasadena. Arrangements between the City of Pasadena and the parties within the 100-acre tract are not governed by either of these contracts. The January 3, 1972 contract cannot therefore be held, as a matter of law, to be in violation of the July 11, 1966 contract and has not necessarily brought about any breach of that agreement.

Utilities' cause of action against Authority and the City of Pasadena for conspiracy and tortious interference with its contractual relations is severed, and the judgment of the trial court as to that cause of action is affirmed. The holdings in our previous opinion remain undisturbed. The judgment of the trial court in the portion of the suit for declaratory judgment between Clear Lake Utilities, Co. and Clear Lake Apartments, Inc. is reversed, and judgment is here rendered that the November 21, 1967 contract granting Utilities the exclusive right to furnish water and sewer service to the property owned by North Clear Lake Development Corporation did not create any obligation now binding on Clear Lake Apartments, Inc. The portion of the suit between Clear Lake Utilities Co. and Clear Lake City Water Authority for a declaratory judgment to interpret and determine the validity of the July 11, 1966 contract between those parties is reversed and remanded, with instructions that if the indispensable parties are not joined within a reasonable time, that suit is to be dismissed.

Affirmed in part; reversed and rendered in part; reversed and remanded in part.