**HUNT COUNTY TAX APPRAISAL DISTRICT, et al., Appellants,**

v.

**RUBBERMAID INCORPORATED, Appellee.**

No. 05–85–01258–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 1986.

Rehearing Denied Oct. 13, 1986.

Peter G. Smith, Dallas, for appellants.

G. Randall Hullett, Greenville, for appellee.

Before STEPHENS, WHITHAM and STEWART, JJ.

STEWART, Justice.

Hunt County Tax Appraisal District, et al. ("Appraisal Authorities") appeal the judgment of the trial court rendered in favor of Rubbermaid, Incorporated, reducing the appraised value of Rubbermaid's property on the appraisal authorities' tax appraisal roll to the amount of $4,500,000 for tax years 1982, 1983, and 1984. The appraisal authorities contend that the trial court erred in reducing the appraised value of Rubbermaid's property in 1982 and 1983 because the evidence establishes that Rubbermaid voluntarily paid these taxes in full, and therefore all questions as to the validity of these amounts became moot. The appraisal authorities further contend that the trial court erred by (1) determining that they were bound by the appraised value of Rubbermaid's property as it appeared on the appraisal authorities' appraisal roll, and that they were therefore denied trial de novo review; (2) denying the appraisal authorities' motion to strike the testimony of Rubbermaid's witness because his testimony was of no probative value; (3) determining that the market value of Rubbermaid's property as of January 1, 1982, 1983, and 1984, was $4,500,000 because there is insufficient evidence, or in the alternative, no evidence, to support such judgment or find-

ing; (4) overruling the appraisal authorities' motion to strike the testimony of Rubbermaid's witness, and their motion in limine to preclude it, because Rubbermaid is estopped to deny the market value rendered for the subject property for each tax year; and (5) awarding Rubbermaid attorney's fees because there is no evidence or, in the alternative, insufficient evidence to support such award. We agree with the appraisal authorities that Rubbermaid voluntarily paid its 1982 and 1983 taxes in full, but we overrule their other contentions. Accordingly, we reverse and render judgment that Rubbermaid take nothing for the tax years 1982 and 1983 and affirm the trial court's judgment on the value of Rubbermaid's property for the tax year 1984. Because of our ruling on the tax years 1982 and 1983, however, we must reverse and remand for new trial the issue of attorney's fees for Rubbermaid in the case concerning the 1984 tax year.

Rubbermaid owns 90.84 acres of land and improvements located at 7121 Shelby Street, Greenville, Hunt County, Texas. The property consists of a one-story steel frame building approximately thirty-four feet in height with 97,475 square feet of manufacturing area, 186,988 square feet of warehouse area, 3,843 square feet of mezzanine area, and an adjoining two-story office area of 3,843 square feet. The subject property is operated by Rubbermaid for its manufacturing operation of injection molding, making plastic houseware products varying from small wastebaskets to large garbage cans. The company also utilizes the property as a distribution center to ship its products to the Sunbelt and West Coast states.

Rubbermaid received notice from Hunt County Tax Appraisal District that the appraised value of the subject property for ad valorem tax purposes as of January 1, 1982 was $5,901,840.00 and as of January 1, 1983 and January 1, 1984 was $5,838,-770.00. Thereafter, Rubbermaid protested the 1982, 1983 and 1984 appraised value of the subject property before appellant, Hunt County Tax Appraisal Review Board. The review board corrected the district's appraisal for 1982 and 1983 and upheld the district's 1984 appraisal, whereupon Rubbermaid timely filed written notice of appeal of the review board's orders and timely filed separate actions for each tax year against the appellants, seeking de novo review from the 1982, 1983, and 1984 appraised values of the subject property. By agreement, the trial court consolidated the three actions into one action for all purposes.

After a trial before the court, the trial judge rendered a judgment declaring that the appraised value of the property, according to the appraisal roll for each tax year, exceeded the market value of the property, and he ordered a reduction of the appraised value on the appraisal roll for each tax year in dispute to $4,500,000. The court further found that Rubbermaid was entitled to a refund of a portion of the ad valorem taxes paid various taxing units that were not party litigants to the action. The judgment also awarded Rubbermaid reasonable attorney's fees in the amount of $5,700 pursuant to sections 42.27 and 42.29 of the Texas Property Tax Code [1] ("the Code").

The appraisal authorities first contend that the trial court erred in determining that the appraised value of Rubbermaid's property exceeded the cash fair market value for tax years 1982 and 1983, because the evidence establishes that Rubbermaid voluntarily paid the 1982 and 1983 ad valorem taxes, making all questions as to their validity moot. Section 42.08 of the Code, as it existed in 1982 and 1983, required the property owner who appeals an ad valorem tax to pay the undisputed amount of the tax for the current year or the amount paid in the previous year, whichever was greater. Donald W. McBride, the Operations Manager for Rubbermaid, testified that Rubber-

1. TEX. TAX CODE ANN. § 42.27 (repealed 1983), and TEX. TAX CODE ANN. § 42.29 (Vernon 1982).

maid timely paid the taxes for the years 1982 and 1983, but that these taxes were not being paid voluntarily. He further testified that, at the time these taxes were paid, Rubbermaid was not certain of the undisputed amount, so it paid the full amount to avoid forfeiture of its right to appeal. The appraisal authorities contend that, because of the statute, such payment renders all questions as to the validity of the taxes moot. We agree.

It is well settled in Texas law that a person who voluntarily pays an illegal tax has no claim for repayment. *National Biscuit Co. v. State,* 134 Tex. 293, 135 S.W.2d 687 (1940); *San Antonio Independent School District v. National Bank of Commerce of San Antonio,* 626 S.W.2d 794 (Tex.App.—San Antonio 1981, no writ); *Johnson Controls, Inc. v. Carrollton-Farmers Branch Independent School District,* 605 S.W.2d 688, 689 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). This rule is said to be one of sound public policy, the object of which is to discourage litigation and to secure the taxing authority in the orderly conduct of its affairs. *Johnson Controls, Inc. v. Carrollton-Farmers Branch Independent School District, supra.*

Rubbermaid does not refute the argument put forth by the appraisal authorities on this issue. Instead, it contends that it did not pay the tax voluntarily and that whether taxes are paid voluntarily or involuntarily is a question of fact to be determined by the trier of fact. *Jay v. Devers,* 563 S.W.2d 880 (Tex.Civ.App.—Eastland 1978, no writ); *Rainey v. City of Tyler,* 213 S.W.2d 57 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.). Rubbermaid further contends that, since it can be inferred that the trial court made an implied finding that the taxes were not paid voluntarily, we cannot disturb this finding if it is supported by probative evidence. *Texas Employers Ins. Assoc. v. Brumbaugh,* 224 S.W.2d 761 (Tex.Civ.App.—Eastland 1949, writ ref'd n.r.e.). We agree with these principles of law, but we conclude that the evidence does not support a finding of involuntary payment.

■ At trial and on appeal, Rubbermaid relied on two theories to support its contention that its payment of the 1982 and 1983 ad valorem taxes was involuntary. First, it maintains that the taxes were paid under protest, as evidenced by McBride's testimony and its filing a lawsuit, and, after payment, appealing the action of the review board for each year in contention. However, a mere showing that ad valorem taxes were paid "under protest" will not support the taxpayer's claim for recovery. *Austin National Bank of Austin v. Sheppard,* 123 Tex. 272, 71 S.W.2d 242 (1934); *Howell v. City of Dallas,* 549 S.W.2d 36 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.).

■ Second, Rubbermaid asserts that the 1982 and 1983 taxes were paid under implied duress and therefore paid involuntarily. It relies on the provisions of former section 42.08 of the Code to establish implied duress. That section read in pertinent part:

(b) A property owner who appeals ... must pay the tax due on the amount of value of the property involved ... that is not in dispute or the amount of tax paid on the property in the preceding year, whichever is greater, before delinquency date or he forfeits his right [to appeal].

Rubbermaid contends that the threat of the forfeiture of its right to appeal the review board's order is sufficient to raise a fact issue on the question of implied duress. We disagree. In cases in which the courts have held for the taxpayers, duress has been clearly established. In *Austin National Bank v. Sheppard,* and *National Biscuit Co. v. State,* the taxpayers, both foreign corporations, paid a tax or fee in lieu of forfeiting their right to do business in the state and their right of access to the courts. Thereafter, they filed suits attacking the constitutionality of the statutes involved. On appeal, the statutes were declared unconstitutional, and, in both cases, it was held that risk of such penalties and punishments constituted duress and thus

that the payments were involuntary. Likewise, *Crow v. City of Corpus Christi*, 146 Tex. 558, 209 S.W.2d 922 (1948), and *Lincoln Nat. Life Ins. Co. v. State*, 632 S.W.2d 227 (Tex.App.—Austin 1982, writ ref'd n.r. e.), concerned commercial taxpayers faced with the threat of losing their rights to conduct business had they not paid the taxes demanded of them. Such is not the case here.

■ Nevertheless, Rubbermaid argues that section 42.08 had just become effective on January 1, 1982; that it contrasted dramatically with pre-code procedural requirements that the taxpayer tender the amount that the taxpayer submitted was due and owing; that it was uncertain of the undisputed amount; and that it paid the full amount of taxes assessed only to avoid the possibility of forfeiting its right to appeal. These arguments have no merit. First, in our view, the requirement in section 42.08 of payment of "the tax due on the amount of value of the property involved . . . that is not in dispute" is a codification of the pre-code requirement that the taxpayer tender the amount the taxpayer submits was due and owing. The phrase "that is not in dispute" refers to that portion of the appraised value of the property involved that the *property owner* does not dispute.

Rubbermaid's confusion or lack of understanding of section 42.08 is no justification for its decision to pay the taxes in full. In fact, section 42.08 clearly established the procedure an appealing property owner was to follow to avoid forfeiture of its right to appeal. Full payment of the taxes assessed does not comply with the statutory requirements. Everyone is presumed to know the law, and if one voluntarily makes a payment which the law would not compel him to make, he cannot afterward assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it. *Johnson Controls, Inc. v. Carrollton-Farmers Branch Independent School District*, 605 S.W.2d at 689.

Rubbermaid had several options in preserving its right to appeal. It could have paid the previous year's tax, paid taxes based on an independent appraisal, or paid taxes based on what it considered the proper appraisal of its property. By failing to do any of the above and by not following the clearly worded statute, Rubbermaid has not preserved the right to appeal. The first point of error is sustained.

In their second and third points of error, the appraisal authorities contend that they were denied trial de novo review of the appraised value of Rubbermaid's property as provided by section 42.23(a) of the Code because the trial court erroneously concluded as a matter of law that they were bound by the appraised value for Rubbermaid's property as it appeared on the appraisal roll of the appraisal district for each year in dispute. Although the appraisal authorities make this contention for each of the three years at issue in this case, our affirmance of their first point of error renders trial de novo of the tax years 1982 and 1983 moot. Therefore, we will consider this point of error only as it applies to the tax year 1984.

The trial court, in its findings of fact, determined that the fair market cash value of the property was $4,500,000 on January 1, 1984 and that the appraised value of the property on Hunt County's appraisal roll for the year 1984 was $5,838,770. In addition, the trial court admitted the testimony of the appraisal authorities' expert, Tommy Roberts, that the fair market value of the subject property as of January 1, 1984 was $8,319,984. Nevertheless, in its conclusions of law, the trial court concluded that "The Defendant is bound by the appraised value for the property, the subject of this suit, as it appears in the appraisal roll of Hunt County Tax Appraisal District, for each tax year in dispute." The appraisal authorities contend that by making this erroneous conclusion, the trial judge, in effect, excluded Roberts' testimony of market value, limited the authorities' proof of value solely to that appearing on the tax roll, and thus denied them trial de novo review of the market value of Rubbermaid's property.

■ Section 42.23(a) of the Code provides:

(a) Review is by trial de novo. The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally.

In this case, Rubbermaid alleged that the appraisal roll value of its property exceeded the appraisal value required by law and asked the court to determine the proper appraised value and to reduce the roll value to the value determined by the court. Sections 42.24, 42.25. The appraisal authorities filed a general denial. The "appraised value required by law" for the subject property was its market value as of January 1, 1984. Sections 1.04(8), 23.01(a). Thus, the issue before the court was the market value of the property, and any evidence that tended to prove market value was admissible. *Montgomery County v. Humble Oil and Refining Co.*, 245 S.W.2d 326, 336 (Tex.Civ.App.—Beaumont 1951).

■ We agree that the trial court erred in concluding as a matter of law that the appraisal authorities were bound by the appraisal roll value of the property on the issue of market value, if it did, but errors of law do not always require reversal of a judgment. TEX.R.CIV.P. 434. Under this rule, the appraisal authorities have the burden to show that the trial court probably would have arrived at a different figure for market value but for the erroneous conclusion of law, because there is no presumption of prejudice from erroneous rulings of the trial court. *Walker v. Texas Employers Ins. Assn.*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). An appealing party must show that the trial court's error probably caused the rendition of an improper judgment, *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962), and we must determine from the record as a whole whether the appraisal authorities have been harmed by the trial court's error.

An examination of the record reveals that the court below conducted a full trial on the issue of market value of the subject property, admitting expert testimony and exhibits from both sides. The values before the court ranged from $2,185,000 as testified by Elkins, Rubbermaid's expert, to $8,319,984 as testified by Roberts, the expert for the appraisal authorities. Further, the parties and the court agreed that any proceedings or orders of the review board determining market value were inadmissible on the issue of value in the trial de novo under section 42.23(b). The court had the authority to weigh the evidence and set the market value at any amount between the highest and lowest values expressed by the witnesses. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39, 47 (Tex. Civ.App.—Amarillo 1978, writ ref'd n.r.e.).

■ Nothing in the record indicates that the trial court did not consider all of the evidence before it in fixing the market value of the property on January 1, 1984 at $4,500,000 pursuant to section 42.24. Consequently, we cannot say that an improper judgment resulted from the trial court's conclusion that the appraisal authorities were bound by the appraisal roll value. Erroneous legal conclusions are not grounds for reversal when the court's fact findings are supported by the evidence and are sufficient to support the judgment. *Smith v. Smith*, 620 S.W.2d 619, 626 (Tex. Civ.App.—Dallas 1981, no writ). Here, the trial court's finding of $4,500,000 as the market value of the subject property is supported by the evidence under the range of values based on the experts' testimony. The appraisal authorities have failed to discharge their burden to show from the record as a whole that the trial court's erroneous conclusion of law was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* The second and third points of error are overruled.

In the appraisal authorities' sixth and seventh points of error, they contend that the trial court erred in overruling their motion to strike Elkins' testimony and in overruling their motion in limine to preclude Rubbermaid from offering evidence below its rendition value because Rubbermaid is estopped to deny the market value it rendered for each tax year. The apprais-

al authorities rely upon pre-code law for their position and maintain that Rubbermaid must plead mistake of fact in preparation and filing its rendition before it can offer evidence of value lower than its rendition. *West Texas Gulf Pipeline Co. v. Hardin County,* 319 S.W.2d 155 (Tex.Civ. App.—Austin 1958), 159 Tex. 374, 321 S.W.2d 576 (1959). We address this point of error only as to the tax year 1984 in view of our holding under the appraisal authorities' first point of error.

We cannot agree with the appraisal authorities' contention. This case is governed by the new Property Tax Code, which was enacted to remedy the many inequities that characterized the previous administration of the ad valorem tax by local taxing authorities. *Valero Transmission Co. v. Hays Consolidated Industries,* 704 S.W.2d 857, 859, n. 1 (Tex.App.—Austin 1986). It provides a uniform system of administrative and judicial review. These statutory proceedings and remedies are mandatory and exclusive. Judicial review is by trial de novo in district court "in the manner applicable to civil suits generally" and with the aid of a jury if requested by either party. Section 42.23; *Texas Architectural Aggregate v. Adams,* 690 S.W.2d 640, 642 (Tex.App.—Austin 1985). Further, under the new code the property owner is no longer required to place a value on the property rendered. Section 22.24(d). In light of these provisions, we hold that Rubbermaid was not bound by its rendition values and was free to offer evidence below those values in the trial de novo in the district court. The appraisal authorities' sixth and seventh points of error are overruled.

In their fourth point of error, the appraisal authorities assert that the trial court erred in denying their motion to strike Elkins's testimony because his opinion of the property's market value is based on assumptions and estimates unsupported by any relevant facts. Specifically, the authorities contend that his use of the income approach without the support of any rental comparables and without any history of rent income arising from the subject property renders his opinion of value devoid of any factual bases and, therefore, inadmissible.

The appraisers for both parties in this case agreed that the comparable sales approach was unavailable in this case because there were no sales of comparable property within the county. Elkins employed only the income approach in valuing the subject property. The income approach to value is an appraisal technique in which anticipated net income is processed to indicate the capital amount of the investment that produces the net income. The steps taken by an appraiser under this approach include estimating gross income; estimating vacancy and credit losses and subtracting them from estimated gross income to arrive at indicated effective gross income; estimating expenses and deducting them from effective gross income to arrive at indicated net income; and selecting the applicable capitalization rate and applying it to effective net income to arrive at an indication of the market value of the property being appraised. The subject property consists of a one-story steel frame building approximately thirty-four feet in height with approximately 280,000 square feet of area, plus an adjoining two-story office area of 3,843 square feet. Elkins testified that market value could not be based on the use that Rubbermaid was making of the property because the likelihood was remote of finding a buyer within "a reasonable time," Section 104.7(A), that could make the same use of the facility as Rubbermaid; therefore, one had to look at the probable use of the building given the market.

Elkins concluded that in Hunt County this property would probably be bought for use as office space and a warehouse or for light manufacturing. The first step in the income approach is to estimate the gross annual rental income of the property; in doing this an appraiser will normally rely upon comparable rental properties. Elkins testified that there were no warehouses that were rented in the Greenville area to which the subject property could be com-

pared. Hence, the appraisal authorities contend that Elkins based his comparable rent figure on a personal assumption with no data to support his opinion. It further contends that from his conflicting testimony, it is apparent that Elkins did not know what a rental comparable was and therefore could not rely solely on his personal knowledge of rents in the area and his experience. Finally, the appraisal authorities maintain that Elkins failed to support his capitalization of income figures with data regarding comparable investments. *United States v. Leavell and Ponder, Inc.,* 286 F.2d 398, 407 (5th Cir.1961), *cert. denied,* 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855; *United States v. Whitehurst,* 337 F.2d 765 (5th Cir.1964).

■ Rubbermaid counters that Elkins did testify that while there were no 280,-000–square–foot warehouses to which the property could be compared, he was familiar with numerous other rental properties in town used for warehouses; that he could adjust for the size of the subject property; that he also owned rental properties in the area; and that he was well aware of what he could expect the property to produce in the way of gross rent. In addition, Rubbermaid states that the appraisal authorities stipulated to Elkins's qualifications as an appraiser and, therefore, the authorities' argument that his testimony should be stricken for failure to rely on specific comparable rental properties goes to the weight and credibility of his testimony rather than to its admissibility. *General Motors Corp. v. Turner,* 567 S.W.2d 812 (Tex.Civ.App.—Beaumont 1978), *rev'd on other grounds,* 584 S.W.2d 844 (Tex.1979).

We agree with Rubbermaid. Elkins had over thirty years' experience as an appraiser and had performed and continued to perform appraisals for many of the major lending institutions of Greenville as well as for numerous governmental agencies. He showed that he was familiar with the rental market in the area. He also testified that it is common for appraisers to reconstruct values based on the appraiser's general knowledge of the market when comparable properties are not available.

Further, Elkins supported his capitalization of income figures with data regarding comparable investments. He used a recapture rate of 3% based on the assumption that the maximum amount of time anyone would allow for a return on his investment would be 33⅓ years. He took an interest rate of 12% from the published rate of the Wall Street Journal on how much interest corporate bonds were paying as of January 1 of each year in question. These methods factually support the 15% capitalization rate used by Elkins.

We conclude that Elkins' figures and methodology were not so inaccurate as to render his opinion legally insufficient evidence of value and that the matters of which the appraisal authorities complain go to the weight rather than the admissibility of the evidence. *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918, 924 (Tex.1977). The appraisal authorities' fourth point of error is overruled.

■ In their fifth point of error, the appraisal authorities contend that there is no evidence or insufficient evidence to support the trial court's determination that $4,500,000 was the value of the property in issue because Elkins's testimony was inadmissible and there was no other evidence from which a market value lower than the appraisal roll value could be calculated. In view of our prior holding that Elkins's testimony is admissible, this point is without merit and is overruled.

In their eighth point of error, the appraisal authorities argue that the trial court erred in awarding Rubbermaid attorney's fees because there is no evidence or insufficient evidence to support such an award. Section 42.27(d) controls the question of attorneys' fees for the tax years 1982 and 1983. Under this section, the taxpayer must prevail on appeal to be entitled to attorney's fees. Because we have held that Rubbermaid has not prevailed on appeal for those years, the attorney's fee issue is moot for the cases involving the 1982 and 1983 tax years.

Section 42.29 controls the attorney's fee issue for 1984 and provides:

> A taxpayer who prevails in an appeal to the court under Section 42.25 or Section 42.26 of this code may be awarded reasonable attorney's fees not to exceed the greater of $5000 or 20 percent of the total amount of taxes in dispute.

The trial court awarded Rubbermaid $5,700 as reasonable attorney's fees "for the preparation and trial of this matter." Thus, the trial court awarded one fee for the three tax years in dispute. This single award requires us to remand the attorney's fee issue for new trial to determine a reasonable fee for the case involving only the 1984 tax year unless we sustain the appraisal authorities' eighth point of error.

It is undisputed that Rubbermaid sought appellate relief pursuant to section 42.25. However, the appraisal authorities contend that, although Rubbermaid had the burden, it failed to prove the appraisal roll value of the property for each tax year in question, and therefore, the court could not determine "the total amount of taxes in dispute" under section 42.29 to arrive at a reasonable attorney's fee that did not exceed the maximum fee allowed under that section.

■ Although Rubbermaid did not introduce the appraisal roll value of the property into evidence, the court found the appraisal roll value of the property for each tax year in dispute. The judge apparently based these findings on the figures reflected in the review board's order determining protest, which was attached to the original petition for each tax year. We base this conclusion on the trial court's statement at the pretrial hearing that he was aware of the appraisal roll values from his review of the file. There is no dispute over the accuracy of the figures. Although the trial court erred in basing its findings on facts not in evidence, the appraisal authorities have not attacked those findings on appeal by properly assigned error. *Gulf Consolidated International, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983). Consequently, they are final and we, as well as the parties, are bound by

them. *Texas Real Estate Commission v. Hood*, 617 S.W.2d 838, 840 (Tex.Civ.App.— Eastland 1981, writ ref'd n.r.e.). The appraisal authorities' eighth point of error is overruled.

■ The judgment of the trial court as to the tax years 1982 and 1983 is reversed and rendered in favor of appellants. The judgment of the trial court as to the tax year 1984 is affirmed, except on the issue of attorney's fees. The 1984 tax case is remanded for new trial on that issue.

WHITHAM, Justice, concurring.

I concur in the result. In its second and third points of error, the appraisal authorities contend that they were denied trial de novo review of the appraised value of Rubbermaid's property as provided by TEX. CODE ANN. § 42.23(a) (Vernon 1982). In disposing of this trial de novo issue, the majority agrees with the appraisal authorities that the trial court would err if it concluded as a matter of law that the appraisal authorities were bound by the appraisal roll value of the property on the issue of market value. The majority, however, overrules the appraisal authorities' second and third points on the grounds that the appraisal authorities failed to discharge their burden to show from the record as a whole that any such erroneous conclusion of law was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.CIV.P. 434. I agree with the majority that the second and third points of error should be overruled under the provisions of rule 434. Therefore, I express no opinion on whether the trial court would err if it concluded as a matter of law that the appraisal authorities were bound by the appraisal roll value of the property on the issue of market value. Consequently, I express no opinion as to whether appraisal authorities are denied trial de novo review if the appraisal roll value of property before the review board is treated as binding upon appraisal authorities on the issue of market value on judicial review sought by a taxpayer.