**TARRANT APPRAISAL DISTRICT, Tarrant County Appraisal Review Board and Colonial Country Club, Appellants,**

v.

**COLONIAL COUNTRY CLUB, Tarrant Appraisal District and Tarrant County Appraisal Review Board, Appellees.**

**No. 2–87–224–CV.**

Court of Appeals of Texas, Fort Worth.

March 8, 1989.

Cantey & Hanger, and Jack C. Wessler and Catherine Alder, Fort Worth, for appellants.

William L. Kirkman, Debra Dillehay Daniel, Bourland & Kirkman, Berl E. Godfrey, Fort Worth, for appellees.

Before WEAVER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

FARRIS, Justice.

The fundamental question underlying this lawsuit is the constitutionality of subchapter F of Chapter 23 of the Tax Code, the so-called "Greenbelt Act." TEX.TAX CODE ANN. secs. 23.81–23.87 (Vernon 1982).

Appellee Colonial Country Club filed suit protesting a determination by Tarrant Appraisal District and Tarrant County Review Board that Colonial was not entitled to special appraisal under subchapter F. The trial court, sitting without a jury, ruled that the Greenbelt Act was not applicable to Colonial as a country club. However, the court refused to allow Colonial to be taxed according to the land's full fair market value. Instead, the trial court based the value on a self-imposed restriction filed by Colonial in the county deed records.

Each party has alleged a large number of points of error, cross-points, and reply points. For the sake of convenience, we have grouped, by party, those points relevant to our disposition of this appeal.

The position of the District and Review Board may be summed up thusly: Colonial's deed restrictions are unenforceable and should not affect the appraisal; the evidence is factually and legally insufficient to support the trial court's determination of the value of the property for the tax years 1982 and 1984 through 1986; and in response to Colonial's cross-point that Colonial did come within the scope of the Greenbelt Act, the District and Review Board argue alternatively that the Greenbelt Act is a violation of article VIII of the Texas Constitution and that Colonial failed to satisfy the requirements of the Act.

Colonial's position may be summed up thusly: the Greenbelt Act is a valid constitutional legislative enactment; Colonial qualifies for appraisal under the Act; even if Colonial does not qualify under the Greenbelt Act, the deed restriction is valid and the property must be appraised with the restriction in mind; and the evidence was legally and factually sufficient to support the trial court's determination of value for the tax years in question. In addition, Colonial contends that the trial court lacked jurisdiction to determine the appraised value of the property for the tax year 1982.

We reform and affirm the judgment of the trial court because the Greenbelt Act is a valid constitutional enactment, applicable to private country clubs, and Colonial has satisfied its requirements. We also find that the trial court had jurisdiction to determine the appraised value for 1982 and there is sufficient evidence to support the trial court's determination of value for the tax years 1982–1986.

## I. CONSTITUTIONALITY OF THE GREENBELT ACT

### A. Method of Appraisal

In point of error fourteen, the District and Review Board argue that the trial

court erred in holding the Greenbelt Act does not violate the Texas Constitution. They take the position that section 23.83 of the Act, providing for appraisal of land based on its value as recreational, scenic or park land, results in a partial tax exemption by allowing the land to be taxed at less than its full market value. TEX.TAX CODE ANN. sec. 23.83 (Vernon 1982).

■ The Texas Constitution provides that taxation of real property shall be equal, uniform and in proportion to value. TEX. CONST. art. VIII, sec. 1. The term "value," within the constitutional requirement that taxation be equal and uniform, means the reasonable cash market value of the property. *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378, 380 (1955); *Lively v. Missouri, K. & T. Ry. Co. of Texas*, 102 Tex. 545, 120 S.W. 852, 856 (1909). The term "market value" has been defined by the supreme court as the price that property will bring when offered for sale by one who desires but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying. *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 202 (1936). This definition of market value is codified in TEX.TAX CODE ANN. sec. 1.04(7) (Vernon 1982). Tax exemptions are limited to those specifically enumerated in article VIII of the constitution. TEX. CONST. art. VIII, secs. 1, 2; *State v. Am. Legion Post No. 58*, 611 S.W.2d 720, 723 (Tex.Civ.App.—El Paso 1981, no writ). The District and Review Board argue that the special appraisal amounts to a partial exemption which does not fall into a constitutionally permitted or required exception.

We disagree. First, appraisal under the terms of the Act provides only a method of assessing value; it does not result in exemption from taxation. Second, the method of appraisal employed by the Act is based upon market value. The fact that the valuation reflects the restricted use to which the land can be put does not render it unconstitutional. The Greenbelt Act provides for a reasonable classification of property based upon a legitimate state interest: the continued existence of scenic, park, and recreational lands in urban areas.

As it is equally and uniformly applied under a legitimate system of classification, it does not violate the mandate of article VIII of the Texas Constitution.

The fact that the Greenbelt Act offers favorable tax treatment to those willing to commit the use of their land to scenic, park or recreational use does not raise the exchange of unrestricted property use for reduced taxes to the status of a tax exemption. Valuation consistent with restricted use does not amount to an exemption.

Both the Texas Supreme Court and the Legislature recognize the inherent difference between valuation and exemption. The Tax Code defines the taxable value of property as the appraised value of the property multiplied by the assessment ratio minus any allowable exemption. TEX.TAX CODE ANN. sec. 1.04(8), (9), (10) (Vernon 1982). Fifty years ago, the Texas Supreme Court explained the distinction between statutes providing for exemptions and those defining a method of valuation in *Republic Ins. Co. v. Highland Park Ind. School Dist.*, 129 Tex. 55, 102 S.W.2d 184, 193 (1937). Holding that reinsurance reserves were to be deducted from the total valuation of assets in computing taxable property, the court held that the deduction of reserves did not constitute an unconstitutional exemption of taxable property, explaining that "[t]he question is not one primarily of exemption of property from taxation, but is the fixing of a standard of valuation.... The question is not one of lack of power, but purely of the exercise of discretion and judgment on the part of the Legislature." *Id.* at 193. The court later reaffirmed its holding in *Hardin v. Central American Life Ins. Co.*, 374 S.W.2d 881, 884 (Tex.1964), pointing out that the constitution, after providing that all property is to be taxed in proportion to its value, provides that value is to be "ascertained as may be provided by law." TEX. CONST. art. VIII, sec. 1 (amended 1984). The court noted that the Legislature "has simply provided that in arriving at the valuation of assets of an insurance company, account must be given to the reserve." *Hardin*, 374 S.W.2d at 884.

The method of determining value employed in the Act correctly adapts the standard of market value assessment to property encumbered by use restrictions and is consistent with the constitutional requirement of equality and uniformity in taxation. The logic of defining value for tax purposes as the price which could be obtained for property in a hypothetical sale on the open market requires that adjustment be made to compensate for the effect of limits upon the owner's use of the property.

The market price of unrestricted land suggests the greatest returns an owner could expect to realize from the use of the land. This standard, however, does not reflect the returns the owner of a parcel of restricted property could expect to realize. Appraisal of land according to its market value as recreational, scenic or park land reflects the fact that the owner of restricted land, unlike the owner of unrestricted land, is no longer free to realize the returns associated with making the highest and best use of the land. A method of valuation that is cognizant of use restrictions on the property reflects the returns that may be realized by the restricted owner, just as full market valuation reflects the returns that may be realized by the owner of unencumbered property. One should not lose sight of the fact that the valuation is used only for purposes of taxation. Adjustment in the terms of the hypothetical sale simply takes account of the effect of the restriction on the value of the land to its owner during the tax year. What would occur in an actual sale would have no bearing on the proper valuation for tax purposes.

Market valuation that takes account of use restrictions upon the property does not violate the equality and uniformity on taxation provision of the Texas Constitution. It has long been recognized that absolute equality and uniformity is an unobtainable ideal. *Whelan,* 282 S.W.2d at 380. The requirement of equality and uniformity does not prevent the reasonable classification of persons and property for taxation. *San Jacinto Nat. Bank v. Sheppard,* 125 S.W.2d 715, 717 (Tex.Civ.App.—Austin

1938, no writ). The Legislature is given broad powers to classify property for taxation. *Dancetown, U.S.A., Inc. v. State,* 439 S.W.2d 333, 336 (Tex.1969). The requirements of equality and uniformity are met when the classification is not unreasonable or arbitrary and operates equally within the class. *Calvert v. Capital Southwest Corp.,* 441 S.W.2d 247, 269 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.), *appeal dism'd,* (lack of substantial federal question) 397 U.S. 321, 90 S.Ct. 1120, 25 L.Ed.2d 336 (1970); *Grayson County State Bank v. Calvert,* 357 S.W.2d 160, 162 (Tex.Civ. App.—Austin 1962, writ ref'd n.r.e.). High property values in urban areas often make it economically unfeasible to set aside lands for park, scenic or recreational use. Classification and special appraisal is a reasonable means of encouraging the continued use of urban lands for those purposes by taxing the land at a rate consistent with its restricted use. There is no indication that the classification operates in an unequal fashion.

We hold that the method of appraisal set forth by the Greenbelt Act provides a method of assessing value based on the reasonable classification of property and as such, does not violate the equality and uniformity of taxation provision of the Texas Constitution. Point of error fourteen is overruled.

## B. Validity of the Use Restriction

The District and Review Board also contend the Act is unconstitutional if applied to Colonial because the deed restrictions filed by Colonial limiting the use of the land to recreational activities are invalid and unenforceable and therefore have no impact on market value.

The Greenbelt Act requires that a valid and enforceable deed restriction limiting the use of the land to recreational, park or scenic use for a period of at least ten years be filed and recorded in the county deed records. TEX.TAX CODE ANN. sec. 23.82 (Vernon 1982). In 1978 Colonial filed a deed restriction in the deed records of Tarrant County that restricted the use of its land to recreational, park and open-space

use for a minimum period of twenty-five years. The restriction expressed an intent to comply with the provisions of TEX.REV. CIV.STAT.ANN. art. 7150n (Vernon Supp. 1978),[1] the statutory predecessor to subchapter F of the Tax Code. Colonial filed a dedicatory deed in 1981 reaffirming its dedication pursuant to article 7150n and for the further purpose of complying with subchapter F, which would replace article 7150n on January 1, 1982.

The District and Review Board contest the validity of the deed restrictions on three grounds. First, they contend because the deed restrictions relied upon by Colonial are only personal covenants, they are not binding upon Colonial or subsequent purchasers. Second, they assert the deed restrictions lack language which would provide an entity other than Colonial with the power to enforce the restriction. Third, they contend that the power of the county attorney to enforce the restrictions pursuant to TEX.TAX CODE ANN. sec. 23.82(c) (Vernon 1982) is illusory. We first address whether a personal covenant is sufficient to form a valid and enforceable deed restriction.

The District and Review Board take the position that the deed restrictions are not enforceable because they are personal as opposed to real covenants. We disagree. They cite no authority, nor are we aware of any, which would support the notion that personal covenants are not valid restrictive covenants.

The primary distinction between real and personal covenants is that real covenants run with the land, binding the heirs and assigns of the covenanting parties, and personal covenants do not. In order to "run with the land" a covenant must be made by parties in privity of estate at the time the conveyance is made. *See Clear Lake Apts. v. Clear Lake Utilities,* 537 S.W.2d 48, 51 (Tex.Civ.App.—Houston [14th Dist.]), *modified on other grounds,* 549 S.W.2d 385 (Tex.1977). Personal covenants bind only the actual parties to the covenant and those who purchase the land with notice of the restrictive covenant, if the restrictions concern land or its use. *Frey v. DeCordova Bend Estates Owners Ass'n,* 632 S.W.2d 877, 879 (Tex.App.—Fort Worth 1982), *aff'd,* 647 S.W.2d 246 (Tex. 1983); *Collum v. Neuhoff,* 507 S.W.2d 920, 922–23 (Tex.Civ.App.—Dallas 1974, no writ); *Montgomery v. Creager,* 22 S.W.2d 463, 466 (Tex.Civ.App.—Eastland 1929, no writ).

The fact that the restrictions are based upon personal covenants and, therefore, would not be binding upon subsequent owners purchasing the land without notice of the restriction does not, as the District and Review Board suggest, affect their validity. Whether a covenant runs with the land or not determines who is bound by it, not whether the covenant is valid. There is nothing in the nature or operation of a restrictive covenant that requires it to run with the land in order to be valid. *See Dellaughter v. Hargrove,* 40 S.W.2d 253, 254 (Tex.Civ.App.—San Antonio 1931, no writ).

Concern over purchasers without notice of the restrictions is misplaced. Colonial's restrictions affect the use and enjoyment of the land. As they are on file in the Tarrant County deed records, subsequent purchasers would have constructive notice of the restrictions and would be bound by them.

Relying on a line of ex parte restriction cases, the District and Review Board also contend the restrictions are not enforceable because Colonial, as sole owner of the restricted property, can modify or remove the use restrictions at will. *See Burns v. Wood,* 492 S.W.2d 940, 943–44 (Tex.1973); *Hill v. Trigg,* 286 S.W. 182, 184 (Tex. Comm'n App.1926, judgm't adopted). *Hill* and *Burns* simply acknowledge that an owner who has filed an ex parte deed restriction but has not sold any of the land is not bound to abide by the proposed plan of use because he has not yet promised anyone he would do so. Unlike the restrictions

---

1. Act of June 16, 1977, ch. 818, sec. 1, 1977 Tex.Gen.Laws 2065, *repealed by* Act of June 13, 1979, ch. 841, sec. 6(a)(1), 1979 Tex.Gen.Laws 2217, 2329 (effective January 1, 1982) (presently contained in Tex.Tax Code Ann. secs. 23.81–23.-87 (subchapter F) (Vernon 1982)).

filed in those cases, Colonial's deed restrictions are not ex parte restrictions. They are grounded on valid personal covenants, and are enforceable by the Tarrant County Criminal District Attorney[2] or any person owning or having an interest in the restricted land, namely, the Board of Governors and members of the club. TEX.TAX CODE ANN. sec. 23.82(c) (Vernon 1982).

Violators must also pay additional taxes and a penalty. If the land is not used exclusively for recreational purposes, the owner must pay, as an additional tax, the difference between the tax paid and the tax that would have been due if the land had not been restricted. *Id.* sec. 23.83(d). If the land is diverted to a use other than recreational use, the owner must pay an additional tax in the amount of the difference between the taxes paid on the land for the previous five years and the tax that would have been due without the restriction. *Id.* sec. 23.86(a). A penalty equal to the difference between the taxes paid in the year of the violation and the taxes that would have been due without the restriction is also imposed. *Id.* sec. 23.87(a). Thus, unlike the owners in *Hill* and *Burns,* Colonial is not free to modify or remove the use restrictions.

■ In their third argument, the District and Review Board assert that the restrictions fail because the power to enforce them is illusory. They contend the failure to explicitly identify in the deed restrictions any entity other than Colonial as having power to enforce the restrictions renders them unenforceable. They also challenge the authority to enforce the restrictions delegated to the county attorney in section 23.82. We address each argument in turn.

The deed restrictions filed by Colonial represent valid personal covenants between Colonial and the State of Texas, and as such, the State may enforce them, regardless of whether the restrictions expressly enumerate that right.

The State, acting through the Texas Legislature, has promised landowners the right to have their property tax assessed according to the Greenbelt Act if they comply with the requirements set forth therein. Colonial, in turn, covenanted with the State to restrict the use of its land to scenic, park and recreational use, stating in the restrictions they had done so pursuant to article 7150n and subchapter F in order to be entitled to the benefits of tax appraisal afforded therein. Incorporation of the language of article 7150n and subchapter F into the deed restrictions has manifested the parties' intent to create, and the terms necessary to create, a valid and enforceable legal covenant.

Pointing out that Tarrant County has no county attorney, the District and Review Board argue the district attorney has no authority to conduct civil actions concerning private parties' use of their property. We first note the powers, duties, and privileges conferred by law on county attorneys in the various counties are conferred upon the criminal district attorney in Tarrant County. TEX.GOV'T CODE ANN. sec. 44.320(b) (Vernon 1988). As to the authority of the county or district attorney to conduct civil actions, the case cited by the District and Review Board is not dispositive. *See Hill Farm, Inc. v. Hill County,* 425 S.W.2d 414, 419 (Tex.Civ.App.—Waco 1968), *aff'd,* 436 S.W.2d 320 (Tex.1969). In *Hill Farm,* the court noted that representation of the county in its general legal business and civil actions is not within the scope of the county attorney's duty to represent the State under article V, section 21 of the Texas Constitution, but did not take issue with that representation apparently because the commissioner's court is authorized to contract with the county attorney to represent the county on such matters. *Id.* at 414.

Enforcement of a deed restriction pursuant to section 23.82 of the Greenbelt Act would not be an action on behalf of Tarrant County. It would be an action on behalf of the State. The State, acting through the Texas Legislature, has authorized the coun-

---

2. The powers, duties, and privileges conferred by law on county attorneys are conferred upon the Criminal District Attorney in Tarrant Coun-

ty. TEX.GOV'T CODE ANN. sec. 44.320(b) (Vernon 1988) and see discussion below.

ty attorney to enforce deed restrictions that comply with the requirements of the Greenbelt Act.

■ For these reasons, we hold that the Greenbelt Act is constitutional and over-rule the District and Review Board's cross-point. Having found the Greenbelt Act is constitutional, we next address whether Colonial is entitled to appraisal under the Act.

## II. REQUIREMENTS FOR APPRAISAL UNDER THE GREENBELT ACT

In addition to the requirement of a valid and enforceable deed restriction, the Green-belt Act provides that the restricted land must be used exclusively for recreational, park or scenic uses and cannot be used in a way that results in the accrual of distribu-table profits or the realization of private gain. TEX.TAX CODE ANN. sec. 23.-83(a)(2), (3) (Vernon 1982).

The trial court granted partial summary judgment, holding that Colonial did not come within the purview of the Greenbelt Act and was not entitled to assessment thereunder. However, in the findings of fact and conclusions of law filed in support of the final judgment, the trial court held that: the deed restrictions filed by Colonial were valid and enforceable; Colonial had used its property for exclusively recreation-al purposes; and did not use its property in a way that resulted in the realization of private gain.

■ Colonial asserts that it qualifies for appraisal under the Greenbelt Act because it met the substantive requirements of the Act. In cross-point two, Colonial argues the trial court erred in overruling its mo-tion for partial summary judgment (assert-ing it is entitled as a matter of law to have its land appraised under the Act), and granting the District and Review Board's motion for partial summary judgment. We do not need to address the first aspect of this point because an order overruling or denying a motion for summary judgment is not a proper subject for appeal. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). In cross-point one, Colonial argues the judgment should be modified to state that

Colonial qualifies for appraisal under the Act. The District and Review Board take the position that Colonial has failed to meet the requirements of the Act. As we have held that the deed restrictions are valid and enforceable, we overrule the District and Review Board's first point of error and address whether the land has been used for non-recreational activities or in a way that resulted in private gain to Colonial's mem-bership.

### A. Recreational Use

■ In points of error ten and eleven, the District and Review Board assert there is factually and legally insufficient evi-dence to support the trial court's finding that Colonial had used its property exclu-sively for recreational use from 1981 through the date of judgment. They take the position that the trial court was correct in its finding that the Greenbelt Act did not apply to private country clubs but argue that if this court finds the Act is applicable to private country clubs, Colonial fails to qualify for appraisal under the Act.

Section 23.83 of the Greenbelt Act states that in order to be entitled to appraisal under the Act, the land must be devoted exclusively to recreational, park, or scenic uses. TEX.TAX CODE ANN. sec. 23.-83(a)(3) (Vernon 1982). "Recreational, park, or scenic use" is defined as "use for individual or group sporting activities, for park or camping activities, for development of historical, archaeological, or scientific sites, or for the conservation and preserva-tion of scenic areas." *Id.* sec. 23.81. The District and Review Board assert that un-disputed evidence was presented at trial that demonstrated Colonial used its proper-ty for purposes other than individual and group sporting activities. They refer us to testimony that the clubhouse located on the property was used for social, civic, and political gatherings and the club operated restaurants, a nursery, pro shop, barber shop, and laundry. They also complain that the club's parking lots were used by people using the premises for these non-recreational purposes.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat. Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the court and disregard all evidence and inferences to the contrary. *See Sherman v. First National Bank,* 760 S.W.2d 240, 241 (1988) (per curiam); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the court, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the find-ing is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

After reviewing all the evidence presented we cannot say that the evidence that Colonial has not met the requirements of section 23.83 is so overwhelming that the finding must be set aside.

Only the land, exclusive of improvements, is eligible for appraisal under the Greenbelt Act. The clubhouse and other improvements remain taxable at the standard rate. The property covers approximately 153 acres. The clubhouse covers 62,000 square feet, less than an acre and a half. The clubhouse activities and use of the parking lot are incidental to the operation of the club's recreational activities. The fact that some of these activities generate revenue for the club does not increase their significance. Many of our state recreation areas are equipped with restrooms, shower facilities, concession areas, parking lots and occasionally, gift shops. Such amenities are clearly incidental to the enjoyment of the recreational area and should not affect its status as such. Points of error ten and eleven are overruled.

### B. Private Gain

In order to be entitled to appraisal under the Greenbelt Act, the landowner must use his land in a way that does not result in the accrual of distributable profits or the realization of private gain. TEX.TAX CODE ANN. sec. 23.83(a)(2) (Vernon 1982). In points of error twelve and thirteen, the District and Review Board assert there is no evidence or, in the alternative, insufficient evidence to support the trial court's finding that Colonial did not use its land in a way that resulted in such gain or profit during the tax years 1982, 1984, 1985, and 1986.

We find there is sufficient evidence to support the trial court's finding and overrule points of error twelve and thirteen.

Colonial is organized as a non-profit corporation. The Texas Non–Profit Corporation Act provides that no part of the income of a non-profit corporation may be distributed to its members, directors or officers and no dividends shall ever be paid. TEX. REV.CIV.STAT.ANN. arts. 1396–1.02(3), 1396–2.24 (Vernon 1980). Colonial's articles of incorporation provide that it will not have any capital stock and no dividends will ever be paid on its membership certificates.

The District and Review Board do not contend that Colonial distributed profits to its members, but take the position that the revenues generated by the annual Colonial National Invitational Tournament, dues, fees and food, beverage and merchandise sales constituted private gain prohibited by the Act. They assert that the earnings inured to the benefit of the individual members in the form of lower dues, improvements and additional facilities. While Colonial's members certainly benefitted from the income generated by these activities, we do not agree this benefit constitutes the private gain contemplated by the Greenbelt Act.

The term "private gain" is not defined in the Tax Code. It has been construed by the Texas Supreme Court in a tax case as referring to gain or profit by private individuals. *See Santa Rosa Infirmary v. City of San Antonio,* 259 S.W. 926, 935 (Tex.Comm'n App.1924, judgm't adopted). In its determination of whether a charitable institution had generated gain or profits that would affect its tax exempt status, the court stated that with respect to the proscription on private gain or corporate profits, "nothing more was intended than that no private individual should reap a profit, or where a corporation was the owner that no distributable earnings in the shape of dividends must accrue." *Id.* This construction of the term has been used consistently since *Santa Rosa.*

Addressing the question fifty-one years later, the Texas Supreme Court stated that the law was well settled that gain or profit referred to "gain or profit by private individuals or the accrual of distributable profits." *City of McAllen v. Evangelical Lu-theran Good Samaritan Society,* 530 S.W. 2d 806, 809 (Tex.1975), *citing Harris v. City of Fort Worth,* 142 Tex. 600, 180 S.W.2d 131 (1944); *City of Dallas v. Smith,* 130 Tex. 225, 107 S.W.2d 872 (1937); *Santa Rosa,* 259 S.W. at 935. This latter requirement is a condition which all corporate entities must meet in order to qualify as a non-profit corporation in Texas. TEX. REV.CIV.STAT.ANN. arts. 1396–1.02(3), 1396–2.24 (Vernon 1980).

■ These cases did not consider whether indirect benefits to the members of a non-profit corporation would be considered prohibited personal gain. No allegations were made that the members reaped profits as a result of their charitable endeavors. Although the situation presented is somewhat different from that found in the charitable institution cases, the accepted definition of the terms corporate profit and private gain are equally applicable. At issue in each situation is whether the earnings of a non-profit corporation should be considered "profits" and alter its tax status. We do not believe the definition of private gain adopted by the Supreme Court would preclude the realization of indirect benefits by members of a non-profit corporation.

■ The prohibition on the accrual of distributable profits recited in the charity cases and in the Greenbelt Act parallels the statutory definition of a non-profit corporation. The Texas Non–Profit Corporation Act defines a non-profit corporation as "a corporation no part of the income of which is distributable to its members, directors, or officers." TEX.REV.CIV.STAT.ANN. art. 1396–1.02(3) (Vernon 1980). In the *City of McAllen, City of Dallas,* and *Santa Rosa* cases, although earnings were generated, there was no capital stock, dividends paid or distribution of property so no private or corporate gain could accrue that would alter the organization's tax exempt status. *City of McAllen,* 530 S.W.2d at 809; *City of Dallas,* 107 S.W.2d at 878 ("The fact that a hospital operated as a charitable institution receives pay from some or most of its patients does not

change its status as a charitable institution"); *Santa Rosa*, 259 S.W. at 935.

In order to obtain tax-exempt charitable status, an organization must not only make no gain or profit, it must also accomplish ends wholly benevolent and benefit persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state. *City of McAllen*, 530 S.W.2d at 809, *citing City of Houston v. Scottish Rite Benevolent Ass'n*, 111 Tex. 191, 198–99, 230 S.W. 978, 981 (1921). The court in *City of McAllen* held that the earnings would not subject the organization to taxation because the earnings were used for permissible purposes: mortgage payments, debt service, capital improvement and other activities designed to sustain or improve the society's benevolent activities. *Id.* at 809. The court in *Santa Rosa* reached the same conclusion, pointing out there was nothing in the record to infer that any of the profits were being utilized for any purposes other than those well within the scope and purpose of the charities. *Santa Rosa*, 259 S.W. at 936. As the court pointed out, the organization was bound by its corporate charter to the exclusive purposes of its charitable declarations. *Id.* at 935.

When the question of whether earnings constitute profits is viewed from the broader perspective of the organization's status as a non-profit organization, the significance of the organization's use of the earnings is not that it is charitable, but rather that it is consistent with its stated purpose.

Non-profit corporations may be organized for any lawful purpose or purposes. TEX.REV.CIV.STAT.ANN. art. 1396–2.01 A (Vernon 1980). They have and may exercise all powers necessary or appropriate to effect any or all of the purposes for which the corporation is organized. *Id.* art. 1396–2.02(15). A non-profit corporation is permitted to confer benefits upon its members in conformity with its purposes. *Id.* art. 1396–2.24. The revenues generated by Colonial were utilized to effect the purposes stated in its corporate charter: "the establishment, support and maintenance of a county club for the promotion and enjoyment of golf, swimming, tennis and other innocent sports." The fact that its membership benefitted indirectly from the generation of these revenues by enjoying new or improved facilities and lower fees and dues is consistent with its stated corporate purpose and is permissible under the Non–Profit Corporation Act.

The District and Review Board refer to the 1986 Internal Revenue Code section that sets out the conditions which must be satisfied for a country club to obtain federal tax exempt status in support of its construction of the phrase private gain. Section 501(c)(7) provides an exemption for "[c]lubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder." I.R.C. sec. 501(c)(7) (West 1986). The companion regulation 1.501(c)(7)–1 provides that when such a club engages in business, such as making its social and recreational facilities available to the general public, it is not organized and operated exclusively for non-profitable purposes and is not entitled to an exemption. Treas.Reg. sec. 1.501(c)(7)–1 (West 1986). We do not find the Internal Revenue Code Rule and Regulation persuasive because they are markedly different from Texas law. They expressly prohibit the inurement of any benefits to the members or shareholders of non-profit corporations. The inurement of such benefit indicates that the organization is not being operated exclusively as a non-profit corporation. The Texas Non–Profit Corporation Act clearly provides that a non-profit corporation may confer such benefits on its membership so long as it is in conformity with the purposes stated in its charter.

We do not read the term private gain to include any benefit which may inure to the members of a non-profit corporation in the corporation's efforts to further its stated purposes. Colonial Country Club is organized and operated as a non-profit corporation. It has not issued any capital stock and has not accrued distributable profits. We hold that the indirect benefits enjoyed

by Colonial's membership as a result of the club's generation of revenues do not constitute private gain as prohibited by section 23.83(a)(2) of the Greenbelt Act. The District and Review Board's challenge to the sufficiency of the evidence to support the trial court's finding that Colonial had not used the land in a way that resulted in the distribution of profits or private gain was based solely on their contention that indirect benefits to the club's members constituted private gain. We disagree and overrule points of error twelve and thirteen.

Because there is nothing in the Greenbelt Act that would indicate it is not applicable to private country clubs and because we find that Colonial has met the requirements specified, we sustain Colonial's cross-points one and two and hold that Colonial Country Club is entitled to appraisal under the Greenbelt Act.

## III. JURISDICTION OF TRIAL COURT TO DETERMINE APPRAISED VALUE FOR TAX YEAR 1982

In cross-points four and five, Colonial contends that the trial court lacked jurisdiction to determine the appraised value of the property for 1982 because Colonial paid its taxes in full for that year. The District and Review Board counter this contention by arguing that Colonial, by seeking trial de novo review of the District and Review Board's orders, put before the trial court all issues concerning the appraised value of Colonial's properties.

Colonial cites *Hunt Cty. Tax Appr. Dist. v. Rubbermaid Inc.*, 719 S.W.2d 215 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) for the proposition that any question of appraised value can be rendered moot by the taxpayer's voluntary payment of the tax. However, *Rubbermaid* actually says that "a person who voluntarily pays an *illegal* tax has no claim for repayment." *Rubbermaid*, 719 S.W.2d at 218 (emphasis added). The clear import of this statement is that voluntary payment renders a question moot only where the taxpayer voluntarily pays *more* than he claims is his share. Nothing in *Rubbermaid* suggests that a taxpayer can block redetermination of appraised val-

ue by paying taxes where the appraised value is in his favor. Furthermore, *Rubbermaid* explicitly states that an appraisal authority is not bound by the appraisal roll value in contesting the market value of the property. *See Rubbermaid*, 719 S.W.2d at 220.

Finally, Colonial's fourth amended petition asked the trial court to determine the fair market value of the property for the tax years 1982 through 1986 in accordance with the Greenbelt Act. In so doing, Colonial raised the question of appraised value since even under the Greenbelt Act the trial court could have found a higher appraised value on the subject property for 1982. In fact, the trial court, while not applying the provisions of the Greenbelt Act, raised the taxable value of Colonial's property from $559,636 to $2,257,000 for the tax year 1982. Because Colonial was seeking appraisal under the Greenbelt Act, the whole issue of appraised value was subject to trial de novo review. Colonial's fourth and fifth cross-points are overruled.

## IV. VALUATION

In points two through nine, the District and Review Board challenge the factual and legal sufficiency of the evidence supporting the trial court's finding that Colonial's property had a value of $2,257,000 during the tax years 1982, 1984, 1985, and 1986.

Although the trial court found that the Greenbelt Act was not applicable to private country clubs, it did find that the deed restrictions were valid and enforceable. Because Colonial is bound by the restrictions, the land's restricted use was properly taken into consideration in assessing a fair market value.

During the trial, four real estate appraisers testified as experts about the value of the land. Cecil Ronald McKay and Charles Osenbaugh based their valuations on the assumption that the restrictions were valid and testified that the highest and best use for the property would be as a golf course. McKay's opinion as to the fair market value of the land was $1,808,000 for 1984, $1,844,000 for 1985, and $1,881,000 for

1986. Osenbaugh assessed the value at $2,257,000 for all three years.

The District and Review Board contend there is no evidence to support the trial court's finding because the restrictions are not valid and enforceable and should therefore have no bearing on the determination of market value. They presented expert testimony that the highest and best use of the property without restrictions would be mixed single and multi-family dwellings. Their assessment of value ranged from $10,468,940 for 1982 to $14,200,000 for 1985 and 1986.

As we have found that the restrictions filed were valid and enforceable, they affect the uses that may be made of the land and should be taken into account in assessing the land's fair market value. Considering all of the evidence in the record before us, we find there is sufficient evidence to support the trial court's determination of value for the tax years 1982, 1984, 1985, and 1986, and overrule points of error two through nine.

## V. CONCLUSION

In conclusion, we hold:

1. The Greenbelt Act is a valid constitutional legislative enactment. The District and Review Board's fourteenth point and first cross-point of error are overruled.

2. The trial court correctly concluded that the deed restrictions filed by Colonial are valid and enforceable. The District and Review Board's first point of error is overruled.

3. There is sufficient evidence to support the trial court's finding that Colonial used its land exclusively for recreational purposes from 1981 through the date of judgment. The District and Review Board's tenth and eleventh points of error are overruled.

4. There is sufficient evidence to support the trial court's finding that Colonial did not use its land in a way that resulted in the accrual of distributable profits or private gain. The District and Review Board's twelfth and thirteenth points of error are overruled.

5. Because Colonial has satisfied the substantive requirements for appraisal under the Greenbelt Act, it is entitled to appraisal thereunder. Colonial's cross-points one and two are sustained.

6. The trial court had jurisdiction to determine the appraised value of the property for the tax year 1982. Colonial's fourth and fifth cross-points are overruled.

7. There is sufficient evidence to support the trial court's finding that Colonial's real property, exclusive of improvements, had a value of $2,257,000 during the tax years 1982, 1984, 1985, and 1986. The District and Review Board's points of error two through nine are overruled.

We reform the judgment of the trial court to state that Colonial Country Club falls within the purview of subchapter F of Chapter 23 of the Tax Code entitled "Appraisal of Recreational, Park and Scenic Land" for the tax years 1982, 1984, 1985, and 1986, and is entitled to ad valorem tax assessment thereunder. As modified, the judgment of the trial court is affirmed.