**Bobby M. BURNS, Petitioner,**

v.

**Edgar A. WOOD, Respondent.**

**No. B–3537.**

Supreme Court of Texas.

Jan. 24, 1973.

Rehearing Denied May 9, 1973.

Protho & Sellers, Lee Sellers, Wichita Falls, for petitioner.

Banner & McIntosh, Fillmore, Lambert, Farabee and Purtle, Wichita Falls, De-Lange, Hudspeth, Pitman & Katz, Eugene J. Pitman, Houston, for respondent.

STEAKLEY, Justice.

## ON MOTION FOR REHEARING

The opinion delivered in this cause under date of January 24, 1973, is withdrawn, and the judgment entered on this date is set aside. The following opinion is substituted therefor.

This is a suit by Bobby M. Burns, petitioner here and plaintiff below, to enforce by the restraint of injunction claimed restrictive covenants, later quoted, against the erection of multi-unit apartment houses on lots owned by Edgar A. Wood, respondent here and defendant below. The right to the relief sought was essentially predicated on a recorded plat and dedication purporting to establish the Park Place Subdivision, as an addition to the City of Wichita Falls, Texas; and on the alleged implementation of the general plan thereby inaugurated. In a trial to a jury, it was found that the lots of Burns and Wood were included in the Park Place Subdivision; that Burns and prior owners had

waived the right to enforce the apartment restriction; that the restriction had been abandoned; and that Burns unreasonably delayed his protest to the apartment project to Wood's injury. After overruling Burns' motion for judgment notwithstanding the verdict, a take nothing judgment was rendered against him by the trial court. This judgment was affirmed by the Court of Civil Appeals upon the holding that Barns did not prove a prima facie case entitling him to the relief sought. 482 S.W.2d 295. We affirm.

Burns established that in 1926 there was placed of record in Wichita County, Texas, a plat and dedication instrument pertaining to a district called Park Place Subdivision, and containing the restrictive covenants which Burns seeks to enforce against the lots held by Wood. The recorded instrument read in part as follows:

"It is hereby agreed that in making sales of property within the limits of said subdivision, such sales shall be made by reference to the attached map and each deed making such conveyance or any reconveyance by the Park Place Realty Company, its successors or its various assigns, shall contain or adequately refer to the following restrictions, which are covenants running with the title to said property, and each and every lot or tract in said subdivision is hereby impressed with such restrictions. Each purchaser in accepting title to said property or any portion of same is bound by said restrictions and agrees thereto by the act of accepting such title. No purchaser or any other one in any manner acquiring any interest in said property shall ever have the right to convey same free and clear of said restrictions.

"These restrictions are as follows, to-wit:

### Art. I.

"No building other than a private dwelling house, apartment house or hotel, together with the suitable out-buildings appurtenant thereto, shall ever be erected on any of said lots or tracts in said subdivision except that churches, schools, store-buildings and filling stations or either may be erected upon the following tracts:

"Tract A—Lot 23, in Block 7; Lot 1 in Block 8; Lot One in Block 6; Block 28; Lot 7 in Block 19; Lot 1 in Block 20.

"Not more than one dwelling shall ever be erected on any lot or tract with the exception of the large tracts designated as follows:

"Tracts B, C, D, E, F, G, H, J, K, L, M, N, O, P, Q, R, S, T, U, V,

"No apartment house which costs less than Ten Thousand ($10,000.00) Dollars shall ever be erected in said subdivision and no hotel which costs less than Seventy Five Thousand ($75,000.00) Dollars shall ever be erected in said subdivision. No dwelling which costs less than Five Thousand ($5,000.00) Dollars shall ever be erected in said subdivision north and east of Burlington Avenue."

\*       \*       \*       \*       \*       \*

### Art. II.

". . . These restrictions are made for the mutual benefit of all persons acquiring property in said subdivision and for the purpose of inducing them to acquire such property and said restrictions are hereby made irrevocable and binding upon the said grantor its successors and assigns, in favor of the purchaser or purchasers, their heirs and assigns, and each purchaser is granted the corresponding right and benefit to compel the observance of such covenants, restrictions, conditions and easements herein enumerated."

■ On its face the recorded instrument manifested a general plan for the

development of Park Place Subdivision as a restricted residential area for the mutual benefit of future purchasers of lots. Each conveyance of a lot was to contain or carry adequate reference to the recorded restrictions; each lot was to be burdened with the restrictions for the benefit of the other lots; and each lot owner was to acquire the right to enforce the restrictions against the other lots. These are, indeed, the elements of a "general scheme or plan." In Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922), the subdivider placed of record a plat of an addition to the City of Wichita Falls. The restrictions upon uses of the lots were stipulated in all of the deeds. This Court said:

"It is perfectly clear that it is lawful for districts with restrictions of this nature to be created, and also that each purchaser has the right to rely on and to enforce those restrictions. It was implied in each contract that every other contract should have these same provisions of restrictions, as they were for the benefit of all, and at once formed an inducement to each purchaser. Thus was inaugurated a 'general scheme or plan' for creating this restricted residence district."

■ In Texas & P. Ry. Co. v. Chandler, 20 S.W.2d 380 (Tex.Civ.App.1929, writ ref'd), Justice Hickman, later Chief Justice of this Court, citing Lamar County v. Clements, 49 Tex. 347 (1878), observed that the difference between the question of dedication, and that of restrictive covenants as to use, is merely nominal so far as the owners of lots purchased on the faith of such reservations are concerned, and stated the rule from Oswald v. Grenet, 22 Tex. 94 (1858) and City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924 (1904), which is applicable here, as follows:

"If the owner of land lays out and establishes a town [subdivision], and makes and exhibits a plan of the town [subdivision], with various plots of spare ground, such as streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage which the plan represents as belonging to them, . . ."

See also Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465 (1941); Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318 (1935); Green v. Gerner, 289 S.W. 999 (Tex.Com.App. 1927); Interstate Circuit, Inc. v. Pine Forest Country Club, 409 S.W.2d 922 (Tex.Civ. App.1966, writ ref'd n.r.e.); Baker v. Alford, 482 S.W.2d 908 (Tex.Civ.App.1972, no writ); and Hooper v. Lottman, 171 S.W. 270 (Tex.Civ.App.1914, no writ).

■ Here, however, beyond the fact that the plat and dedication instrument were placed of record, there was no evidence that the plan reflected therein was implemented pursuant to or in accordance with the recorded requirements, or that the Subdivision as so cast ever came into existence. There was no evidence of any conveyance by Park Place Realty Company of any lot in the Subdivision, or of any conveyance of any lot by any grantor containing or carrying a reference to the recorded plat or to the stipulated restrictions. Burns was not a party to the recorded plat. He was deeded his property by his father in 1953 and the conveyance contained no reference to the restrictions although the lots were described as out of Park Place Subdivision. No prior conveyances were shown. The conveyance to Wood of the lots which Burns claims are burdened with the covenants for the benefit of his lots contained no reference to the restrictions, and in fact described the lots as out of the Singleton Addition.[1] The

1. The record indicates that certain areas in the southern portion of Park Place were subsequently replatted and designated Singleton Additions 1, 2 and 3;

# 944

evidence offered by Burns went only to showing ·that the properties in question are located in the area delineated on the plat and that property usages have been generally consistent with the recorded Park Place restrictions. But it was not shown that any lots were purchased in reliance on the recorded plat and dedication instrument, or that any lot, or line, or street is where it is as a matter of conformance therewith, or that any consistency of the present property uses with the recorded plan is more than coincidental. In fact, there was evidence of substantial variances between the streets and internal lot lines shown on the plat and as they were on the ground. So it cannot be said under this record that the lots owned by Wood were burdened with the recorded restrictions or that Burns acquired the right to enforce the restrictions against these lots. For aught this record shows, Park Place Subdivision was ex parte at all times and Park Place Realty could change or ·abrogate the subdivision plan at will. See Hill v. Trigg, 286 S.W. 182 (Tex.Com.App.1926) and Gibbs v. Garden Oaks Board of Trustees, 459 S.W.2d 478 (Tex.Civ.App.1970, writ ref'd n.r.e.).

We are not holding that recorded property restrictions may not be enforced in every instance where deeds to lots in an established subdivision do not contain or refer to them. We do not reach the question of their enforcibility or not under facts which establish that the recorded plan has been understood and relied upon by the parties in interest. See Bethea v. Lockhart, 127 S.W.2d 1029 (Tex.Civ.App.1939, writ ref'd); and Ann. 4 A.L.R.2d 1364.

The judgments below are affirmed.

POPE, J., concurs in the result.

that substantial changes in the lots and lines of Park Place Subdivision were effected by the replatting of the Singleton

Additions; and that the lots of Wood lie within Singleton Addition 3.