COMMISSIONERS COURT OF GRAYSON COUNTY, TEXAS, Honorable Horace Groff, Honorable Douglas Walker, Honorable Johnnie Mccraw, Honorable Carol Shea, and Honorable C.E. Short, Appellants,

v.

Clifford ALBIN, Appellee.

No. 06–98–00169–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 26, 1999.

Decided April 16, 1999.

---

Ronald H. Clark, Wolfe, Clark & Henderson, Sherman, for appellants.

Robert H. Roeder, Abernathy, Roeder, Robertson, Boyd & Joplin, PC, McKinney, Charles Joseph Crawford, McKinney, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

### OPINION

Opinion by Justice GRANT.

The Commissioners Court of Grayson County refused to grant permission for the filing of a revised plat of a subdivision located in Grayson County. Clifford Albin, who had sought to file the revised plat with the county clerk, sought and obtained a writ of mandamus ordering the Commissioners Court to grant his request to file the revised plat of the subdivision. The Commissioners Court appeals the district court's granting of the writ of mandamus.

The Commissioners Court contends that the trial court erred by granting summary judgment because its decision was discretionary in nature and not mandatory, and because Albin failed to provide the proof required by statute to show that the replat would not interfere with any other subdivision landowner's "established rights." The Commissioners Court also filed a motion for summary judgment which was denied. The Commissioners Court contends that

the district court also erred by denying their motion.

Clifford Albin, as owner and developer, created the Red Oak Subdivision in Grayson County. He submitted a plat for the subdivision, which was approved in 1996. The plat contained four lots, each approximately 4.5 acres in size. He sold lot number 4 to Don Berger in 1997. Albin still owns lots 1, 2, and 3.

In March 1998, Albin requested a revision to those three lots which would replat them into eleven single family lots of about one acre each. Don Berger, a landowner in the subdivision, objected to the request.

Local Government Code § 232.041 [1] provides for the filing of a revision of a plat with consent of the Commissioners Court.

Inherent in filing an amended plat, although not specifically stated in that section, is that it comply with the same requirements set forth in statute for the filing of the original plat. To hold otherwise would be to allow subdividers to circumvent the statute by doing by revision what they could not do under the requirements of the filing of the original plat. No complaint is made in the present case that the revised plat does not meet the requirements for the filing of a plat generally. The complaint involves the separate requirements for the filing of a revised plat.

The applicable portion of the statute reads as follows:

(c) [T]he court shall adopt an order to permit the revision of the subdivision plat if it is shown to the court that:

(1) the revision *will not interfere with the established rights of any owner of a part of the subdivided land;* or

(2) each owner whose rights may be interfered with has agreed to the revision.

TEX. LOC. GOV'T CODE ANN. § 232.041 (Vernon Supp.1999). (Emphasis added.)

The Commissioners Court heard the request at a hearing at which Berger (the owner of lot 4) presented evidence in the form of oral testimony, written statements, exhibits (including a petition signed by residents of the area objecting to the replat), and the minutes of two meetings of the Denison Planning and Zoning Commission (which had approved the replat). Berger also introduced letters from several individuals disputing Albin's claim that he could not sell the property in large blocks, a letter from the fire chief of Denison about the risks created by long cul-de-sacs (which would be created by the replat) for emergency personnel and firefighters in attempting to perform their duties, and written statements by two other individuals setting out the problems and changes in the neighborhood that they believed were inevitable if the replat was granted.

Berger, the objecting landowner, stated that he objected for the reasons stated above, and also because the changed plat, by the very nature of the proposed changes, would be unfair, because he had purchased this property because it was a large lot, surrounded by other large lots, with little traffic, in a pastoral setting. Berger argues the proposed changes would also obstruct the view from his property and would cause traffic in the area to increase substantially over what was anticipated when he bought the property. He further states that the changes, if approved, would necessarily cause his property to decrease in value.

At that hearing, Albin stated that he had purchased the property in 1976 and had

1. Counsel referred to Section 232.009 in the briefs, but that provision applies only to subdivisions located outside the extraterritorial jurisdiction of municipalities with a population of 1.5 million or more. Because the property in the present case is located in Grayson County, which does not have a city with the population requirement of that statute, we find that Section 232.041 is applicable. The language of the two statutes is basically the same.

not "misrepresented anything to anybody." Janna Faith, a local realtor who had listed the property for sale, stated that she could not sell the lots in four-acre tracts.

The Commissioners Court tabled the matter for two weeks and then held a second public hearing. Albin offered no additional evidence. One witness, Jack Windlow, testified that he and others had offered Albin $40,000 each for the three remaining lots, which was the amount Albin had stated he would have taken when the property was for sale. Albin's counsel argued that the Commissioners Court had no discretion in making its decision and that "established rights" consisted only of such things as roads and utilities.

The Commissioners Court refused to allow the revision to be filed. The following shows the original plat, and the next page shows the proposed revised plat.

Albin then filed a petition for writ of mandamus with the district court against the county officials. In the petition, he alleged that under the statute the county could refuse to approve a replat *only* if the replat interferes with the "established

rights" of a landowner in the subdivision and that the record conclusively demonstrated that the proposed replat would not in any way interfere with Berger's "established rights." Therefore, Albin argued, the Commissioners Court had a ministerial duty to grant his request, and by failing to do so, it had abused its discretion.

On May 26, 1998, the Commissioners Court filed a motion seeking summary judgment, attaching copies of all documents used in the proceedings before them and copies of their official minutes of the meetings. On July 14, 1998, Albin filed his response and his own motion for summary judgment. The district court granted Albin's motion and overruled the motion of the Commissioners Court.

The Commissioners Court contends that the trial court erred by granting Albin's motion for summary judgment. It contends that it was Albin's burden to show to the court that the revision **would not** interfere with the established rights of the lot owner (Berger) and that Albin had failed to do so. The Commissioners Court further contends that evidence was presented to show that the revision **would** interfere with the owner's established rights.

■ The Texas Constitution establishes the commissioners courts as the counties' principal governing body. Tex. Const. art. V, § 18. The powers and duties of the commissioners courts include aspects of legislative, executive, administrative, and judicial functions. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 79 (Tex.1997); *Ector County v. Stringer,* 843 S.W.2d 477, 478 (Tex.1992).

The Texas Constitution vests appellate jurisdiction and general supervisory control over a county commissioners court with the district court, subject to such exceptions and under such regulations as the law may prescribe. Tex. Const. art. V, § 8. With a few narrow exceptions, the Legislature has not prescribed procedures for the district court's exercise of this ap-

pellate jurisdiction or supervisory control. *Agan,* 940 S.W.2d at 80; *Stringer,* 843 S.W.2d at 479. The enabling legislation empowering the district court repeats the constitution's terms. Tex. Gov't Code Ann. § 24.020 (Vernon 1988); *Agan,* 940 S.W.2d at 79 (citing 35 David Brooks, County & Special District Law § 5.11 (Texas Practice 1989)).

■ Case law defines the scope of the district court's jurisdiction. A party can invoke the district court's constitutional supervisory control over a commissioners court judgment only when the commissioners court acts beyond its jurisdiction or clearly abuses the discretion conferred upon it by law. *Agan,* 940 S.W.2d at 80; *Stringer,* 843 S.W.2d at 479.

■ If the commissioners court acts illegally, unreasonably, or arbitrarily, a district court may so adjudge. *Id.* However, in reviewing a commissioners court judgment for abuse of discretion, the district court has no right to substitute its judgment and discretion for that of the commissioners court. *Id.* The district court may order the commissioners court to exercise its discretion, but cannot tell the commissioners what decision to make. *Id.* Once the commissioners court exercises its discretion, the district court may review the order for abuse of discretion.

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *Agan,* 940 S.W.2d at 81; *see Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render such judgment as the trial court should have rendered. *Jones,* 745 S.W.2d at 900.

The parties in this case have no dispute about the scope or the content of evidence that was presented to the Commissioners Court, and which was thereafter made summary judgment evidence by the parties.

The Commissioners Court contends that the trial court erred by granting summary judgment for Albin because he did not provide any evidence to show that an established right of an owner in the subdivision would not be violated by a change in the plat. It argues that the statute places the burden upon a party attempting to revise a previously approved plat to show that the revision will not interfere with the established rights of another property owner, and that Albin wholly failed to provide any evidence to that effect. Based upon Albin's failure to prove that his proposed revision would not affect the other landowner's established rights, and the presence of proof from the landowner about the substantial and detrimental changes that would result from the revision, the Commissioners Court argues that the evidence was sufficiently in conflict that it was not required by statute to reach only one decision. Therefore, it acted within its discretionary authority and the granting of the summary judgment was improper.

The overarching question is what the statute means by the language "established rights." We interpret it to mean rights established by the filing of the original plat. It is the original plat and rights thereunder that may be altered if a revised plat is filed. In *MacDonald v. Painter*,[2] the Texas Supreme Court held that the mere filing of a map which depicted lots, but had no declaration restricting the size of the lots, was not a prohibition upon redividing into smaller lots. The Supreme Court went further to say

> No covenant that the owner will not sell his land except in parcels delineated upon the recorded map with reference to which certain lots have been sold is implied by the making of such map and the sell [sic] of certain lots shown thereon, and the owner's right to dispose of unsold portions of his lots singularly or in

bulk or by so dividing them into smaller parcels and selling them in such parcels is complete.

In the *Painter* case, there were covenants, but the covenants did not govern the issue in question; therefore, the Supreme Court looked to the map or plat depicting the lots to determine if there was any declaration that restricted the size of the lots and thus prohibited a resubdivision into smaller lots. The Supreme Court found no Texas case on point on this issue, so the Supreme Court embraced the language from courts of other states which provided that, "Such covenants cannot be implied from the mere making and filing of the map showing the different subdivisions or by selling lots in conformity therewith." This language becomes a part of the reasoning of the court in *Painter* and a part of the jurisprudence of this state.

■■■ Therefore, under Texas law, the only rights established for the purchasers of lots set forth on the plat were the ownership rights of the specific property which the owner was conveyed. Generally, other specific rights for a subdivision, such as what use may be made of the property and a limitation of the size of all lots and a limitation on the types of buildings, are established by restrictive covenants. These restrictive covenants are sometimes filed along with the plat, either on a separate document or on the plat itself, or the restrictive covenants can be on the deeds conveying the property in the subdivisions. In the present case, the record does not show any restrictive covenants. Such restrictive covenants can set out with specificity the plan of development and the rights of the purchasers in relation to all the other lots in the subdivision. In the present case, although the sizes of the lots were specifically designated as required by statute, there was *no declaration restricting the size of the lots.*

**2.** 441 S.W.2d 179 (Tex.1969); *see also Lehmann v. Wallace,* 510 S.W.2d 675, 680 (Tex.

Civ.App.-San Antonio 1974, writ ref'd n.r.e.).

In the case of *Evans v. Pollock*,[3] the Supreme Court held that there can be implied reciprocal negative easements when the purchaser has actual or constructive notice of a general plan of development and other lots in the subdivision have been sold and were impressed with restrictive covenants. In the present case, however, no lots had been impressed with restrictive covenants. Therefore, the *Pollock* case is distinguishable from the present case.

In the *Burns v. Wood*[4] case, the recorded plat and dedication instrument specifically provided that each conveyance of a lot was to contain or carry adequate reference to the recorded restriction and that each lot was to be burdened with the restriction for the benefit of the other lot. The recorded instruments provided with specificity the restrictive covenants applicable to the subdivision. In the present case, there were no restrictive covenants shown.

However, in the present case, with no restrictive covenant, the landowner is not faced with the limitations claimed by the Commissioners Court and the purchaser of the lot.

■ The statutory provisions requiring the commissioners court to approve plats and revisions of plats before they are filed in the records of the county clerk were not designed to dispose of complex civil cases determining ownership rights, injunctions, monetary damages, and other relief that can be sought in the district court. The statute specifically sets up guidelines for the commissioners court to use in determining whether to allow a plat to be filed in the county clerk's records. Section 232.024 of the Local Government Code[5] provides that a commissioners court shall refuse to approve a plat if it does not meet the requirements prescribed by or under the statute or if a required bond is not

filed with the court clerk. The statute does not give the county commissioners the option of not filing the plat if the requirements of the statute are met.

In the present case, there was no contention that the requirements of the statute had not been met except that the revision would interfere with the established rights of the owner of the one lot that had been purchased. As discussed above, the lot owner's rights established by the filing of the original plat are only that he was entitled to own the parcel of land he had purchased. Without restrictive covenants to protect him against changes in other portions of the subdivision, he did not have any rights to control the other sections of the subdivision. As to the subdivision owner establishing that this right would not be interfered with, the proposed revision on its face shows that his lot is not changed by the revision. Thus, the district court did not err in ordering the Commissioners Court to file the revised plat.

The judgment of the trial court is affirmed.

CORNELIUS, Chief Justice, concurring.

I concur in the majority opinion and the judgment, but I write separately to state more clearly what I believe the Legislature meant by "established rights."

We begin with the assumption that the Legislature had a purpose for using every word in the statute. *Bomar v. Trinity Nat'l Life & Accident Ins. Co.,* 579 S.W.2d 464 (Tex.1979). In law, established usually means settled, fixed, or confirmed. BLACK'S LAW DICTIONARY 546 (6th ed.1990); *see also Suit v. State,* 30 Tex.App. 319, 17 S.W. 458 (1891). I do not believe the Legislature would have used the word "established" to modify the word "rights" if it intended to protect such ethereal rights as

---

3.  796 S.W.2d 465 (Tex.1990).

4.  492 S.W.2d 940, 943 (Tex.1973).

5.  TEX. LOC. GOV'T CODE ANN. § 232.024 (Vernon Supp.1999).

environment, level of value, aesthetics, or other rights that are not established by contract or other formal act. If the Legislature had intended to protect such general rights, I believe it would have used only the word "rights" and not "established rights." I would therefore hold that established rights include only those rights established or acquired by plat, conveyance, contract, judicial decree, or other formal act.

Because the undisputed evidence before the Commissioners Court showed that no established right as defined above was affected by the replat, I join in the affirmance of the judgment.

ROSS, Justice, dissenting.

I dissent because I believe the majority's construction of Tex. Loc. Gov't Code Ann. § 232.041 (Vernon Supp.1999) is too narrow. In passing this statute, the legislature for the first time established procedures for revising a subdivided plat that is under the control of a county. Under the law, the commissioners court is required to approve the revision if there is no infringement on property owners' "established rights" or if any infringement is acceptable to the property owners.

The statute does not define "established rights," but I disagree with the majority's view that the only rights that are "established" are the rights created by the filing of the original plat. In the absence of restrictive covenants, by the majority view, "the only rights established for the purchasers of lots set forth on the plat were the ownership rights of the specific property which the owner was conveyed." If so, then the objecting landowner acquired no rights from the filing of the original plat that he did not presumably acquire from the filing of his own deed. If ownership rights of the specific property are the only rights established for the purchasers of such lots, then what protection does Section 232.041 provide that they do not already have? It seems reasonable to conclude that the legislature intended this

statute to provide protection for lot owners not just for contractual rights, but for rights in general.

The majority relies on *MacDonald v. Painter*, 441 S.W.2d 179 (Tex.1969), as its source for defining "established rights." This was a declaratory judgment case, dealing primarily with restrictive covenants in deeds and whether or not those covenants prohibited the construction of duplexes on subdivided lots. "One further question" dealt with whether the restrictions prevented the developers from resubdividing three platted lots into six lots. In concluding that they did not, the court pointed out that the three lots had already been altered by purchases made by the surrounding owners of portions of the three lots, and the developers therefore resubdivided lots which had already been altered. The court further pointed out that other jurisdictions have held that the mere filing of a map which depicted lots, **but which had no declaration that restricted the size of lots**, was not a prohibition upon the resubdivision into smaller lots. It was in this context that the court then made the quotation from a North Carolina case which the majority repeats and on which it relies. The original plat in the instant case clearly declared that each of the four lots would contain 4.4518 acres. It was not a mere map depicting lots "which had no declaration that restricted the size of lots." Neither had any of the remaining lots already been altered.

In other cases, the Texas Supreme Court has recognized what may be considered "established rights" arising from a general plan of development in subdivision plats. In *Evans v. Pollock*, the court reviewed a situation where some lots in a subdivision surrounding a lakefront had been sold and were impressed with restrictive covenants, while unsold lakefront lots belonging to the grantors were not. The court held that the lakefront lots as shown by the subdivision plat were subject to a general plan of development, which was created by the common grantor. Based

upon this conclusion, the court held that the lots not sold subject to the covenants were nonetheless subject to the implied rights of the other lot owners. Therefore, the court concluded that a grantee could "enforce similar restrictions [the scheme or plan of development] ... against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants." *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex.1990).

In *Burns v. Wood*, a subdivision was established by plat and dedication with restrictive covenants written into deeds that (in pertinent part) restricted the building of apartments on the properties. The court noted that the documents "manifested a general plan for the development," and that each lot was burdened with restrictions for the benefit of other lots. Thus, the court concluded, a "general scheme or plan" was in existence to create a restricted residence district. The court referred to *City of Corsicana v. Zorn*, 97 Tex. 317, 78 S.W. 924, 925 (1904), and quoted language from that opinion as follows:

> If the owner of land lays out and establishes a town (subdivision) ... with various plots of spare ground, such as streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage which the plan represents as belonging to them.

*Burns v. Wood*, 492 S.W.2d 940, 943 (Tex. 1973).

Under the rationale of these cases, it appears that the objecting landowner in the present case had at the very least an implied right that could be enforced against the developer when the developer attempted to abandon the original scheme or plan of development-in reliance upon which the lot owner had purchased his property-in favor of a new plan. There is evidence that under the replat of the subdivision there would be a decrease in value of his property. This was property sold by the developer and purchased by the landowner based upon the representation that the whole of the property was subject to a particular plat as reflected in the official records of the county. The value of the property, as recognized in *Pollock*, is thus not merely controlled by the restrictive covenants upon some properties or the plats upon those properties, but also by the expectation of the purchasers that other landowners in the subdivision would be likewise restrained. That value is created by the "general plan of development" originating from a common grantor, which was dispositive in *Pollock*. There is evidence in the present case of a general plan of development created by a common grantor, based upon which the purchaser bought one of four lots in the subdivision.

The landowner also produced evidence that, under the replat, fire safety in the area would be decreased and traffic would be increased. He further demonstrated a concern that the smaller lots might not be able to properly handle the septic systems necessary. The only evidence introduced by the developer was the revised plat itself which he contends shows on its face that no established rights of the landowner will be adversely affected. However, the revised plat shows nothing about whether established rights are, or are not, interfered with.

Under the statute, before it is mandatory for a commissioners court to permit the revision of a subdivision plat, it must be shown that the revision will not interfere with the established rights of any owner. Here, the developer made no attempt to make such a showing and thus failed in his burden of proof. On the other hand, there was considerable evidence that the revision would interfere with the landowner's rights.

The question is whether the Commissioners Court had the discretion to decide, or if it was required to reach a single decision-that being to grant the revision. If the evidence is sufficient to support a conclusion that the Commissioners Court's action was discretionary in nature, then the Commissioners Court had the authority to act and they were not required to approve the revised plat. Further, if the information before the Commissioners Court was sufficient to activate its discretion to act, then the trial court could not conclude that the Commissioners Court clearly abused its discretion by denying the request for replat. Based on the evidence, the trial court had no right to substitute its judgment and discretion for that of the Commissioners Court. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 80 (Tex.1997).

I also disagree with the construction of "established rights" given in the concurring opinion. The bill analysis for the statute in issue, obtained from the Legislative Library, provides the following:

> *Background Information:*
>
> This bill ... requires the Commissioners Court to approve the revision if there is no infringement on property owners' rights or if any infringement is acceptable to the property owners.
>
> . . . .
>
> Section 3. Requires the Commissioners Court to issue an order permitting the revision if the proposed revision does not interfere with the property owners' rights or if the owners agree to any interference.

BILL ANALYSIS, Tex. H.B. 1157, 68th Leg. (1983).

Since this analysis refers to only **rights** and not to "established" rights, it is reasonable to conclude that the legislature intended a more general protection of rights than the restricted construction given by the majority and in the concurring opinions. If the legislature had intended to so restrict its protection, it could have easily done so.

For these reasons, I respectfully dissent.